Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Eileen Ahern (Bar No. 216822)
eahern@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:  (213) 955-9250

Attorneys for Defendant X Corp. in *Doe v. Tea Dating Advice, Inc., et al.,* No. 3:25-cv-06325-WHO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRISELDA REYES, individually and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEA DATING ADVICE, INC.,<br><br>Defendant. | Case No.: 3:25-cv-06321-AGT (lead case)<br>Assigned to the Hon. William H. Orrick<br><br>Hon. William H. Orrick<br><br>**DEFENDANT X CORP.'S RESPONSE TO PLAINTIFF JANE DOE'S MOTION TO CONSOLIDATE CASES**<br><br>Date: September 17, 2025<br>Time: 2:00 p.m. |
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEA DATING ADVICE, INC., X CORP., and 4CHAN COMMUNITY SUPPORT LLC,<br><br>Defendants. | Case No.: 3:25-cv-06325-AGT |

1

2

3                                                          Case No.: 3:25-cv-06336-AGT

4   JANE DOE II, individually and on behalf of all
    others similarly situated,

5               Plaintiff,

6   v.

7   TEA DATING ADVICE, INC.

8               Defendant.

9

10                                                         Case No.: 3:25-cv-06363-AGT

    JANE DOE, individually and on behalf of all
11  others similarly situated,

12              Plaintiff,

13  v.

14  TEA DATING ADVICE, INC.,

15              Defendant.

16                                                         Case No.: 3:25-cv-06376-AGT

17  CELESTE JONES, on behalf of herself and all
    similarly situated individuals,

18              Plaintiff,

19  v.

20  TEA DATING ADVICE, INC.,

21              Defendant.

22

23  JANE DOE, individually and on behalf of all      Case No.: 3:25-cv-06433-AGT
    others similarly situated,

24

25              Plaintiff,

26  v.

27  TEA DATING ADVICE, INC.,

28              Defendant.

DEFENDANT X CORP.'S RESPONSE TO PL. JANE DOE'S MOTION TO CONSOLIDATE

1

2

3

4     JARELL BROWN, on behalf of herself and all      Case No.: 3:25-cv-06445-AGT
      similarly situated individuals,

5                    Plaintiff,

6     v.

7     TEA DATING ADVICE, INC.,

8                    Defendant.

9

10    JANE DOE, individually and on behalf of all      Case No.: 3:25-cv-06457-AGT
      others similarly situated,

11                   Plaintiff,

12

13    v.

14    TEA DATING ADVICE, INC.,

15                   Defendant.

16                                                     Case No.: 3:25-cv-06538-AGT
      KRISTI STEVENS, individually and on behalf
17    of all others similarly situated,

18                   Plaintiff,

19    v.

20    TEA DATING ADVICE, INC.,

21                   Defendant.

22

23    JANE DOE, individually and on behalf of all      Case No.: 3:25-cv-06559-AGT
      others similarly situated,

24                   Plaintiff,

25

26    v.

27    TEA DATING ADVICE, INC.,

28                   Defendant.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT ................................................................1

II.     LEGAL STANDARD...........................................................................3

III.    ARGUMENT.......................................................................................3

    A.      Consolidation of Movant's Case Frustrates Judicial Convenience.......................3

    B.      Consolidation Would Result in Prejudice, Delay, and Confusion..........................7

        1.      Consolidation Would Prejudice X Corp. and non-Movant Parties..............7

        2.      Consolidation Would Cause Confusion...................................8

        3.      Consolidation Would Delay All the Related Actions .................................9

IV.     CONCLUSION..................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell-Alanis v. Baxter*,
  No. 6:21-cv-00885-MK, 2021 U.S. Dist. LEXIS 263425 (D. Or. Nov. 4, 2021) .....................9

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01102-WJM-STV, 2017 U.S. Dist. LEXIS 142626 (D. Colo. Sep. 1, 2017) ...........4

*Collins v. City & Cty. of S.F.*,
  No. 13-cv-03456-MEJ, 2014 WL 5422177 (N.D. Cal. Oct. 24, 2014) ....................................9

*Corcept Therapeutics, Inc. v. Rothschild*,
  No. C 07-03795 JW, 2008 WL 11446505 (N.D. Cal. June 12, 2008) ....................................10

*Cornet v. Twitter, Inc.*,
  No. 3:22-cv-06857-JD, 2023 WL 3029236 (N.D. Cal. Apr. 19, 2023)....................................6

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) .................................................................................................9

*Dodaro v. Standard Pac. Corp.*,
  No. EDCV 09-1666-VAP (OPx), 2009 WL 10673229 (C.D. Cal. Nov. 16, 2009) ..................8

*Fair Hous. Council v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..............................................................................................6

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*,
  No. 18-CV-6588-EAW-MJP, 2019 WL 6841810 (W.D.N.Y. Dec. 16, 2019) .........................5

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  416 F. Supp 161 (C.D. Cal. 1976) .........................................................................................4

*In re Experian Data Breach Litig.*,
  No. 15-cv-01592 AG (DFMx), 2017 WL 4325583 (C.D. Cal. May 18, 2017) ......................3

*Kaplan v. 21st Century Oncology Holdings*,
  No. 16-cv-0210-FtM-99MRM, 2016 WL 9383330 (M.D. Fla. July 21, 2016) .......................3

*KGK Jewelry LLC v. ESDNetwork*,
  No. 11CV9236-LTS-RLE, 2014 WL 7333291 (S.D.N.Y. Dec. 24, 2014) ..............................8

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  CV 12-02943 MMM (FFMx), 2013 WL 12129944 (C.D. Cal. Jan. 14, 2013).......................10

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ...................................................................................................6

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022)...............................................................................6, 9

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) .............................................................................................6, 9

*Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.*,
   No. 5:20-cv-02251-EJD, 2021 WL 577394 (N.D. Cal. Feb. 16, 2021) ...................................4

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*,
   303 F. Supp. 2d 1027 (N.D. Cal. 2003) .....................................................................................4

*Plan Adm'r of the Chevron Corp. Ret. Restoration Plan v. Minvielle*,
   No. 20-cv-07063-TSH, 2024 WL 1974544 (N.D. Cal. May 3, 2024) ...........................3, 4, 7, 8

*Snyder v. Nationstar Mortg. LLC*,
   No. 15-cv-03049-JSC, 2016 WL 3519181 (N.D. Cal. June 28, 2016)..........................................8

*Yuksel v. Twitter Inc.*,
   No. CV-21-00137-TUC-RM, 2022 WL 4367619 (D. Ariz. Sep. 21, 2022) ........................6, 10

*Zhang v. Twitter Inc.*,
   No. 23-CV-00980-JSC, 2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ...................................5

**Rules**

Fed. R. Civ. P. 21 ...........................................................................................................................7

Fed. R. Civ. P. 42 ...........................................................................................................................3

Fed. R. Civ. P. 42(a) .......................................................................................................................3

I.    **PRELIMINARY STATEMENT**

One of these cases is **_not_** like the others:

> • *Reyes v. Tea Dating Advice, Inc.*; 3:25-cv-06321-AGT
>
> • *Doe v. Tea Dating Advice Inc., **X Corp., and 4chan Community Support LLC**; 3:25-cv-06325-AGT
>
> • *Doe II v. Tea Dating Advice, Inc.*; 3:25-cv-06336-AGT
>
> • *Doe v. Tea Dating Advice, Inc.*; 3:25-cv-06363-AGT
>
> • *Jones v. Tea Dating Advice, Inc.*; 3:25-cv-06376-AGT
>
> • *Doe v. Tea Dating Advice, Inc.*; 3:25-cv-06433-AGT
>
> • *Brown v. Tea Dating Advice, Inc.*; 3:25-cv-06445-AGT
>
> • *Doe v. Tea Dating Advice, Inc.*; 3:25-cv-06457-AGT
>
> • *Stevens v. Tea Dating Advice, Inc.*; 4:25-cv-06538-KAW
>
> • *Doe v. Tea Dating Advice, Inc.*; 3:25-cv-06559-TSH.

(Motion to Consolidate (ECF No. 18) (the "Motion" or "Mot."), at 1 (emphasis added).) Nine of the ten Related Actions assert claims solely against Defendant Tea Dating Advice, Inc. ("Tea") for its failure to secure its users personal identifying information ("PII"). Only **one** asserts claims against X Corp. (and 4chan Community Support LLC ("4chan")). But X Corp. did **_not_** leak anything and has **nothing** to do with Tea's data security practices—and no one alleges otherwise. Plaintiff Jane Doe I (3:25-cv-06325-AGT) merely alleges that, among the billions of posts on X Corp.'s platform, X Corp. failed to remove some of the PII posted by third parties in the aftermath of the Tea data leak. It is that outlier plaintiff ("Movant") who seeks consolidation here.

Consolidating Movant's case with the other nine Related Actions does not serve the interests of judicial convenience and will likely lead to prejudice, delay, and confusion. First, Movant's case will dramatically expand the scope of discovery in the Related Actions. Compared to the nine other Related Actions, Movant brings different claims against different defendants based on different alleged facts. (*See generally Doe v. Tea Dating Advice Inc., X Corp., and 4chan Community Support LLC*, 3:25-cv-06325-AGT (ECF No. 1) (July 28,

2025) (the "Complaint" or "Compl."). Whereas the other nine Related Actions bring claims against Tea for its failure to secure its users' PII, Movant challenges X Corp.'s moderation of PII on its own platform and its alleged failure to remove certain content. (Compl. ¶ 152.) Discovery into whether Tea adequately secured plaintiffs' PII has no bearing on X Corp.'s alleged conduct, and vice-versa. Second, consolidation of Movant's case, which alone includes claims against X Corp., raises time-consuming questions unique to Movant's case. For instance, X Corp.'s Terms of Service at least apply to any putative class members who are users of X; they include a Texas forum selection clause and choice of law provision; and they limit X's liability for claims like those asserted here. Likewise, Section 230 of the Communications Decency Act, which provides immunity to social media platforms for claims based on their content moderation decisions, will be central X Corp.'s defense, as will the First Amendment, which protects X Corp.'s content moderation decisions from government control. These issues will not even be litigated in the nine other Related Actions that do not challenge moderation decisions.

Consolidation of Movant's case will also cause prejudice, delay and confusion. The allegations against Tea and X Corp. differ in spades: Tea is accused of gross privacy violations; X Corp., by contrast, is accused of failing to remove only some content on a platform that hosts hundreds of millions of new posts *per day*. (Compl. ¶ 74 (X Corp. "would sometimes remove" offending links); *see* Ex. B (Decl. of S. Rao dated October 25, 2024, *X Corp. v. Media Matters et al.*, Case No. 4:23-cv-01175-O (ECF No. 122) at 41).) X Corp. will be prejudiced by having to present its case to a factfinder alongside nine Related Actions focusing on just Tea. Likewise, the non-Movant plaintiffs will be prejudiced by being forced to present their cases alongside one Related Action involving X Corp., and a factfinder will likely be confused. Even further, consolidation will almost certainly lead to delay. Not only will the expanded scope of the case cause delay, but at the appropriate time, X Corp. intends to move to strike Movant's Complaint under California's Anti-SLAPP law, which should stay discovery, as well as move to transfer the case to Texas under the forum selection clause in X Corp.'s Terms of Service. All in all, consolidation of Movant's claims will create substantial inefficiencies and needlessly complicate

1   this case, and it should be denied.

2   **II.   LEGAL STANDARD**

3       Rule 42 permits the court to consolidate cases involving common questions of law or

4   fact. Fed. R. Civ. P. 42(a). "In determining whether or not to consolidate cases, the Court should

5   weigh the interest of judicial convenience against the potential for delay, confusion and

6   prejudice." *Plan Adm'r of the Chevron Corp. Ret. Restoration Plan v. Minvielle*, No. 20-cv-

7   07063-TSH, 2024 WL 1974544, at *3 (N.D. Cal. May 3, 2024) (cleaned up). "Considerations of

8   convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* at

9   *6 (citation and internal quotation marks omitted). Movant "bears the burden of demonstrating

10  that convenience and judicial economy would result from consolidation." *Id.* (internal quotation

11  marks omitted).

12  **III.   ARGUMENT**

13      **A.      Consolidation of Movant's Case Frustrates Judicial Convenience**

14      Given the differences between Movant's case and the nine other Related Actions,

15  Movant has not (and cannot) show that consolidation advances judicial convenience. Movant

16  claims "[t]he Related Actions assert common causes of action against common defendants

17  and seek similar relief in response to the same event: Tea Dating Advice's Data Breach."

18  (Mot. at 3.) But of the ten Related Actions, Movant's is the *only* one that asserts claims

19  against X Corp. (and 4chan), the only one that seeks relief unrelated to Tea, like "requiring

20  [X Corp.] to implement systems to detect and remove stolen PII," and the only one that

21  concerns X Corp.'s "supposed "failure[] to prevent the dissemination of stolen PII on [its]

22  platform[]." (Compl. ¶¶ 152, 198). In stark contrast to the consolidated data breach cases that

23  Movant relies on, Movant seeks to lump different claims against different defendants based

24  on different theories together with actions solely focused on Tea. (Mot. at 2–4 (citing *In re*

25  *Experian Data Breach Litig.*, No. 15-cv-01592 AG (DFMx), 2017 WL 4325583 (C.D. Cal.

26  May 18, 2017) (asserting claims against only Experian and its affiliates)); *Kaplan v. 21st*

27  *Century Oncology Holdings*, No. 16-cv-0210-FtM-99MRM, 2016 WL 9383330, at *2 (M.D.

28  Fla. July 21, 2016) ("[a]lthough some cases name other entity defendants, those other entities

1    appear to be affiliated with or related to" the common defendant"); *Bellwether Cmty. Credit*

2    *Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01102-WJM-STV, 2017 U.S. Dist. LEXIS

3    142626, at *3 (D. Colo. Sep. 1, 2017) (consolidating cases brought "against the same, single

4    Defendant")).[1]

5         Consolidating Movant's claims against X Corp. (and 4chan) into actions asserting

6    claims against only Tea frustrates judicial convenience. Movant's inclusion of different

7    claims against different, unaffiliated defendants based on different alleged conduct makes

8    discovery in all the Related Actions "far more expansive, expensive, and time-consuming"

9    than it would be absent consolidation. *Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.*,

10   No. 5:20-cv-02251-EJD, 2021 WL 577394, at *4 (N.D. Cal. Feb. 16, 2021) (rejecting

11   consolidation because "the two cases before this Court do not involve identical parties or a

12   substantial overlap of underlying facts[,] mainly because [one] includes expansive claims

13   against [defendant] that are not present in [the other]."). Indeed, there is *no* factual overlap

14   between Movant's claims challenging X Corp.'s moderation of PII on its platform, (Compl.

15   ¶ 152), and any claim in the nine other Related Actions that concern only Tea's handling of

16   PII. Evidence that might be relevant to Movant's case, like certain X Corp. policies and

17   practices, is wholly irrelevant to the other nine Related Actions. *See Minvielle*, 2024 WL

18   1974544, at *7 (rejecting consolidation and explaining that judicial economy is not served

19   where "much of the relevant evidence in [one case] is irrelevant in [the other], and vice-

20   versa").

21        Against this backdrop, Movant's bare assertion that consolidation "will simplify

22   discovery, pretrial motions, class certification issues, and other case management issues"

23

24   ─────────────────

25   [1] Unsurprisingly, none of Movant's authorities consolidated cases under these circumstances. Mot. at 2–3 (citing *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029

26   (N.D. Cal. 2003) (consolidating two patent claims against a single defendant); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp 161, 176 (C.D. Cal. 1976) (rejecting argument that

27   the court lacked authority to order a consolidated complaint in an already-consolidated action because the "alleged securities fraud perpetrated through Equity Funding Corporation of

28   America" was "[the] core issue [] central to all the proceedings before this Court in M.D.L.")

1  rings especially hollow. (Mot. at 3.) With consolidation, the Court would be burdened with

2  the added task of coordinating discovery related solely to X Corp. with discovery for nine

3  other cases related solely to Tea. It would also have to accommodate briefing schedules on

4  motions critical to one action that have nothing to do with the remaining nine actions. *See*

5  *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*, No. 18-CV-6588-EAW-MJP,

6  2019 WL 6841810, at *3 (W.D.N.Y. Dec. 16, 2019) (holding consolidation was not

7  warranted despite "an overlapping legal claim and factual allegations" because the "range of

8  claims" in one action compared to the other "places a heavy burden on the Court to try to fit

9  both cases into the same mold for purposes of discovery").[2]

10      Injecting X and its Terms of Service into a consolidated action also complicates

11  "other case management issues," including the appropriateness of this forum, the relevant

12  choice of law, and the claims and defenses that must be litigated. At a minimum, any putative

13  class member who uses X Corp.'s platform is bound by X's Terms of Service. *See* Ex. A

14  (https://x.com/en/tos).[3] And Movant's "Breach of Third Party Beneficiary Contract" claim

15  (Compl. ¶¶ 184–190) forces the court to grapple with the application of X's Terms of Service

16  even with respect to putative class members who don't use X Corp.'s platform.[4] The X

---

18  [2] Any consolidated class certification motion would create additional complications. Movant
19  seeks to represent a class of "[a]ll persons residing in the United States whose Personally
   Idtenifiable [sic] Information ("PII") was exposed in the Tea data breach announced on or about
20  July 25, 2025." (*Doe v. Tea Dating Advice, Inc., et al.*, 3:25-cv-06325, ¶ 78 (ECF No. 1) (July
   28, 2025); *see also id.* ¶ 79 (proposing subclass of "[a]ll persons residing in the United States
21  whose driver's licenses were exposed in the Tea data breach announced on or about July 25,
22  2025"). But any putative class claim against X Corp. would require a separate class definition
   and require individualized inquiries into (among other things) what information was posted on
23  the platform, whether it was removed, whether the post caused any legally cognizable injury, and
   whether a putative class member agreed to X Corp.'s Terms of Service ("X's Terms"). These
24  issues would require discovery, briefing, and orders on issues unique to only one of ten cases.
   [3] All Exhibits ("Ex. _") refer to documents attached to the Declaration of Kenneth M. Trujillo-
25  Jamison, filed concurrently herewith. X Corp. respectfully requests the Court consider Exhibit A
   in connection with this Motion. *Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL
26  5493823, at *2 (N.D. Cal. Aug. 23, 2023) (court may consider documents incorporated by
27  reference and matters of public record).
   [4] X Corp. disagrees with Movant's theory that "Plaintiff and Class Members" are third-party
28  beneficiaries of X Corp.'s Terms of Service, but this claim "cannot be resolved without reference
   to the contract." *Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2023 WL 3029236, at *2–3

1   Terms of Service provide that "[t]he laws of the State of Texas" govern disputes, and

2   designate Texas as the exclusive forum to bring "[a]ll disputes related to these Terms or the

3   Services [i.e., X's services], including without limitation disputes related to or arising from

4   other users' and third parties' use of the Services and any Content made available by other

5   users and third parties on the Services." (Ex. A, at 13.) And among other things, X's Terms

6   of Service "disclaim all responsibility and liability for . . . any harm . . . that results from [the

7   user's] access to or use of the Services or any Content," and that "[t]o the extent permitted by

8   law, [the user] waive[s] the right to participate as a plaintiff or class member in any purported

9   class action." *Id* at 11.; *see Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 26 (2021) (enforcing

10  limitation of liability clause in Twitter's Terms of Service); *Yuksel v. Twitter Inc.*, No. CV-

11  21-00137-TUC-RM, 2022 WL 4367619, at *3 (D. Ariz. Sep. 21, 2022) ("[m]ultiple courts

12  have found Twitter's forum selection clause valid and enforceable."). X Corp. also has

13  several other defenses unrelated to its Terms of Service that are irrelevant to the nine Related

14  Actions naming only Tea, including immunity under Section 230 of the Communications

15  Decency Act and the First Amendment. *Fair Hous. Council v. Roommates.com, LLC*, 521

16  F.3d 1157, 1184 (9th Cir. 2008) (citation omitted); *O'Handley v. Padilla*, 579 F. Supp. 3d

17  1163, 1186-88 (N.D. Cal. 2022) ("Twitter has important First Amendment rights that would

18  be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and

19  how to enforce those policies") *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir.

20  2023).

21      In short, Movant fails to demonstrate that consolidating this action asserting unique

22  claims against unique defendants premised on unique allegations into nine other actions that are

23  nearly identical to each other serves judicial economy. To the contrary, any consolidated action

24  will be bogged down with irrelevant discovery and questions unique to Movant's case, like the

25  appropriateness of this forum, the application of Texas law, plaintiffs' possible disclaimer of

26  

_____

27  

28  (N.D. Cal. Apr. 19, 2023) (applying contractual forum selection clause to third-party beneficiary
    claims).

1   certain causes of action or waiver of proceeding as a class, and other issues unique to Movant's

2   case.[5]

3       **B.   Consolidation Would Result in Prejudice, Delay, and Confusion**

4           Because consolidation would not serve judicial convenience, the inquiry ends. But even if

5   it did somehow increase judicial economy, "the Court must still balance the savings of time and

6   expense consolidation might produce against the delay, confusion or prejudice that would result

7   from consolidation." *Plan Adm'r of the Chevron Corp. Ret. Restoration Plan*, 2024 WL

8   1974544, at *5. Here, consolidation only creates prejudice, delay, and confusion.

9           1.   <u>Consolidation Would Prejudice X Corp. and non-Movant Parties</u>

10          Movant "proposes the Court consolidate the [] actions in a manner that might carry

11  some benefit to [her] . . . but consolidation comes at the expense of dragging [X Corp.] into

12  an action in which they do not have any interest." *Plan Adm'r of the Chevron Corp. Ret.

13  Restoration Plan*, 2024 WL 1974544, at *5. X Corp. is a defendant in only one of the ten

14  Related Actions Movant seeks to consolidate, so "[t]here can be no reasonable dispute that

15  consolidating [them] will expand the scope, burden, and expense of trial for [X Corp.]" *Id*.

16  Prejudice is compounded by the drastic difference between inflammatory allegations that

17  "primary defendant" Tea (Mot. at 1) collected and failed to protect sensitive PII, and

18  allegations that X Corp unwittingly failed to remove third-party users' posts from its

19  platform. (Compl. ¶ 51.) Tea, "as the operator of "a 'safety' app designed to protect women,"

20  is allegedly responsible for "one of the most catastrophic and ironic data breaches in the

21  digital age [that] exposed their most sensitive personal information to the darkest corners of

22  the internet." (*Doe v. Tea Dating Advice, Inc., et al.*, 3:25-cv-06325, ¶ 1 (ECF No. 1) (July

23  28, 2025).) By contrast, X Corp. allegedly "would sometimes remove" offending links, even

24  though "[a]ttempts to contain the spread proved futile" because of "[t]he internet's

25  decentralized nature": "[f]or every link taken down, ten more appeared" across the Internet.

26  (*Id*. ¶ 74.) Consolidating Movant's case with nine others directed at Tea alone amplifies the

27  _____

28  [5] Misjoinder is also a grave concern here, and X Corp. reserves its right to move on that basis
    after the court decides whether to consolidate the actions.  *See* Fed. R. Civ. P. 21.

1    risk that a factfinder will conflate X Corp.'s alleged inaction with Tea's egregious action. *See*

2    *Snyder v. Nationstar Mortg. LLC,* No. 15-cv-03049-JSC, 2016 WL 3519181, at *3 (N.D. Cal.

3    June 28, 2016) (determining that consolidation was inappropriate given prejudice arising

4    from "requir[ing] the jury to weave back and forth between the two actions, each involving . .

5    . different key players, different factual scenarios and supporting evidence, and different

6    statutory violations").

7         Consolidation would also prejudice all other non-Movant plaintiffs. Those nine

8    plaintiffs all chose not to bring causes of action against X Corp, so "it would be unduly

9    onerous to expect [them] . . . to plead to issues raised in [Movant's] case." *Minvielle*, 2024

10   WL 1974544, at *5. Among other things, if forced to plead Movant's unique claims about X

11   Corp.'s content moderation in some consolidated complaint, those nine plaintiffs expose

12   themselves to the liability and class waivers and the forum issues discussed *supra* § III.A., as

13   well as a special motion seeking attorney's fees under California's Anti-SLAPP law. If the

14   pleadings were kept separate, any economy from consolidation is lost, and "Defendants . . .

15   would need to review filings to determine if any action is required on their part, something

16   they would not need to do if the cases remain separate." *Id.* And down the road, plaintiffs in

17   the nine other cases would be further prejudiced by having "to participate in substantial

18   discovery that is irrelevant to their cases." *Dodaro v. Standard Pac. Corp.*, No. EDCV 09-

19   1666-VAP (OPx), 2009 WL 10673229, at *6 (C.D. Cal. Nov. 16, 2009).

20         2.    Consolidation Would Cause Confusion

21         "Consolidation is also inappropriate where it will result in confusion," as it would

22   here. *Plan Adm'r of the Chevron Corp. Ret. Restoration Plan*, 2024 WL 1974544, at *6.

23   Movant's action involves different parties, different alleged facts, and different defenses from

24   the other nine Related Actions. "[C]ourts generally deny consolidation requests when

25   consolidation of disparate claims would muddle the issues before the court or trier of fact."

26   *KGK Jewelry LLC v. ESDNetwork*, No. 11CV9236-LTS-RLE, 2014 WL 7333291, at *3

27   (S.D.N.Y. Dec. 24, 2014) (citation omitted). That is true even where there is some overlap

28   between the claims. *See id.* ("Action I is significantly more streamlined and focuses on a

1   discrete pair of contracts. Action II, despite having been narrowed by this Court's Opinion

2   and Order of September 30, 2014, contains numerous breach of contract claims that are not

3   premised on the contracts at issue in Action I.").

4          Consolidation would dramatically expand the scope of issues that would otherwise be

5   raised in the nine single-defendant actions. Injecting unique claims and factual circumstances

6   relating to X Corp. hinders a factfinder's ability to discern what evidence applies to what

7   claims against what defendants. *Bell-Alanis v. Baxter*, No. 6:21-cv-00885-MK, 2021 U.S.

8   Dist. LEXIS 263425, at *8–9 (D. Or. Nov. 4, 2021) (denying consolidation and holding "[i]n

9   addition, consolidating the two actions risks creating confusion as to the specific claims

10  brought against Defendants."); *Collins v. City & Cty. of S.F.*, No. 13-cv-03456-MEJ, 2014

11  WL 5422177, at *3 (N.D. Cal. Oct. 24, 2014) ("The facts, circumstances, witnesses and time

12  periods supporting each Plaintiff's claims vary, and to combine discovery and trial in these

13  three cases would lead to unnecessary confusion."); *Snyder*, 2016 WL 3519181, at *3. This

14  confusion counsels against consolidation.

15         3.    <u>Consolidation Would Delay All the Related Actions</u>

16         Although "the Related Actions are at their procedural inception," (Mot. at 3)

17  consolidating Movant's case with the other nine Related Actions will cause immediate delay.

18  Unlike the other nine actions, Movant's case is susceptible to at least two unique motions.

19  *First*, X intends to file an anti-SLAPP motion, given that Movant's allegations concern X

20  Corp.'s moderation decisions. *See* Cal. Code Civ. P. § 425.16; *O'Handley v. Padilla,* 579 F.

21  Supp. 3d 1163, 1186–88 (N.D. Cal. 2022) (decisions about what "content to include, exclude,

22  moderate, filter, label, restrict, or promote" on X's platform" are protected by the First

23  Amendment." (citations omitted)), *aff'd* on other grounds sub nom. *O'Handley v. Weber*, 62

24  F.4th 11454 (9th Cir. 2023), cert denied, 2024 WL 3259696 (U.S. July 2, 2024). Discovery

25  should be stayed during the pendency of this motion, given that California enacted its anti-

26  SLAPP statute "to prevent SLAPPs by ending them early and without great cost to the

27  SLAPP target." *Cross v. Facebook, Inc*., 14 Cal. App. 5th 190, 198 (2017) (citation omitted);

28  *Mireskandari v. Daily Mail & Gen. Tr. PLC*, CV 12-02943 MMM (FFMx), 2013 WL

12129944, at *3 (C.D. Cal. Jan. 14, 2013) ("[p]ermitting discovery to proceed would expose defendants to the sort of intrusive, expensive, and expression-chilling discovery and litigation that the anti-SLAPP statute was specifically enacted to avoid."); *Corcept Therapeutics, Inc. v. Rothschild,* No. C 07-03795 JW, 2008 WL 11446505, at *2 (N.D. Cal. June 12, 2008) (proceeding with a case while an anti-SLAPP appeal is pending would be inconsistent with the "point of the anti-SLAPP statute"). *Second*, X may move to transfer the action to Texas, based on X's Terms of Service, which as noted above makes the Northern District of Texas the exclusive forum for any disputes relating to X's services. *Yuksel v. Twitter Inc.*, No. CV-21-00137-TUC-RM, 2022 WL 4367619, at *3 (D. Ariz. Sep. 21, 2022) ("[m]ultiple courts have found Twitter's forum selection clause valid and enforceable.")

Unique motions aside, the scope of discovery is broader and the law more complex in Movant's case than in the other nine actions. *See supra* § III.A. Whereas the other nine actions concern whether user data was leaked from Tea, Movant's (should it survive a motion strike and dismissal) involves X Corp. and 4chan's content moderation functions and attendant individualized inquiries into whether a given Tea victim's information appeared on either platform and whether they are bound by the terms of service, including its limitation of liability. These inquiries will inevitably delay resolution of the nine Related Actions that would not even undertake them absent consolidation. Additionally, claims against X Corp. by X Corp.'s users or third-party beneficiaries will implicate issues of Texas law and a Texas forum. *See supra id.* These complicated questions of law, which the other nine actions will not otherwise be required to address, will inevitably delay resolution of this matter.

**IV.  CONCLUSION**

Unlike the nine other Related Actions, Movant's case asserts unique claims against unique defendants based on unique factual circumstances. Consolidation would thus hinder, not serve, judicial convenience. In any event, the resulting prejudice, confusion, and delay outweigh any convenience that consolidation might bring. Accordingly, X Corp. respectfully requests that the Court deny Movant's motion to consolidate the Related Actions.

Respectfully submitted,

1   Dated:  August 20, 2025                     WILLENKEN LLP

2

3                                       By:  */s/ Kenneth M. Trujillo-Jamison*
                                             Kenneth M. Trujillo-Jamison
4                                            Attorneys for Defendant X Corp. in *Doe v.*
                                             *Tea Dating Advice, Inc., et al.,*
5                                            No. 3:25-cv-06325-WHO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT X CORP.'S RESPONSE TO PL. JANE DOE'S MOTION TO CONSOLIDATE