Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Melissa Clark (*pro hac vice to be filed*)
mclark@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

*Counsel for Plaintiff Jane Doe and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TEA DATING ADVICE DATA BREACH LITIGATION<br><br>This Document Relates to: All Actions | Case No. 3:25-cv-06321-WHO<br><br>**RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL**<br><br>Judge:  Hon. William H. Orrick<br>Ctrm:   2<br>Date:   October 8, 2025<br>Time:   2:00 PM |

**TABLE OF CONTENTS**

A. Ms. Wolfson has done the most work to identify, investigate, and advance potential claims, putting the class's interests at the forefront of her efforts. ...................................................... 1

B. Cole/Berry's objection to Ms. Wolfson's advancement of her clients' interests shows they are not the best choice to represent the class. ........................................................................ 4

C. The timing of the complaints' filings favors appointing Ms. Wolfson. ................................. 5

D. Cole/Berry's claimed "support" is both disingenuous and irrelevant. ................................... 6

E. Ms. Wolfson is more experienced and knowledgeable than Cole/Berry. .............................. 7

G. The Court should appoint Ms. Wolfson to serve as interim lead counsel. ............................. 7

Plaintiff Jane Doe respectfully submits this response in further support of her application to appoint Tina Wolfson as interim lead counsel (ECF No. 46), and in opposition to the applications of Scott Cole and Anderson Berry ("Cole/Berry") (ECF No. 44) and John Yanchunis (ECF No. 45).

### A. Ms. Wolfson has done the most work to identify, investigate, and advance potential claims, putting the class's interests at the forefront of her efforts.

Beyond her experience and credentials, Ms. Wolfson is "best able to represent the interests of the class" because she has already worked the hardest (and with success) to support those interests. Ms. Wolfson's application describes the work she and her team have already performed to investigate and advance this case—including expert retention and analysis, the inclusion of comprehensive facts, novel claims and social media defendants, client communication and support, the resolution of claims with defendant 4chan, ongoing resolution efforts with defendant X, early and productive discussions with defendant Tea about remediation, the ongoing analysis of data-dissemination and victim harassment, and successful efforts to relate and consolidate cases, which ultimately led to the order directing this very briefing on an expedited basis.

Further, Ms. Wolfson has continued to support, advise, and advocate for her clients consistently—from when news of this incident broke, through today. She has continued to work with experts to understand the technological side of the breach and the fallout, has worked with her clients and third parties to mitigate their harm, and continues to work with defendant X to reach an agreement on mitigation. Indeed, Ahdoot Wolfson has been retained by more than 60 class members, the majority of whom have had pictures of their government IDs exposed. These many class members' support for the appointment of Ms. Wolfson should carry significant weight.

In addition, Ahdoot Wolfson invested numerous additional hours in preparing and filing the Amended Complaint (ECF No. 49), which includes class members from six states, and provides additional detail, additional technological analysis, and the most comprehensive, up-to-date factual story of the Data Breach. "[W]hen an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks." *See* Moore's Fed. Prac. § 23.120(3)(a) (3d. Ed. 2007). If appointed, Ahdoot Wolfson will be able to file a consolidated

1

complaint within two weeks of appointment. This efficiency will further help advance the class's claims.

No other applicant suggests they have undertaken as much effort to move this case toward a resolution on its merits.

In contrast, Cole/Berry's cut-and-paste complaints reveal a lack of effort to investigate the facts and nuances of this case, or even update the allegations from other cases they have filed in their volume data breach practices. For example, Cole's complaint failed to consider the named plaintiff's standing, adequacy, or typicality. According to news reports, Cole stated to the press that his named-plaintiff client "signed up for the app only days before the breach happened" in July 2025.[1] But, according to Tea, only users who signed up before February 2024 were affected by the disclosure of selfies and photo identification.[2] *See also, e.g.,* ECF No. 1 (Cole complaint basing claims on allegations that the plaintiff submitted an image as part of the sign-up process). While direct messages were also disclosed, Cole's complaint makes no allegation that the plaintiff ever sent a direct message in the mere "days" she used the app, let alone that hers were disclosed. *See id.*

Cole's complaint, filed July 28, 2025, also alleges that the plaintiff "received a letter from Defendant stating that Plaintiff's Private Information was involved in the Data Breach." *Id.* ¶ 18. *See also id.* ¶ 37 (reiterating that plaintiff learned of the breach upon "receipt of a letter from Defendant"). But Tea did not begin sending notice letters until approximately August 28, 2025. Elsewhere, Cole's complaint acknowledges this, alleging: "While Defendant claims to have discovered the breach as early as July 25, 2025, Defendant had not yet begun informing individual victims of the Data Breach as of the date of this filing [one business day later]." *Id.* ¶ 8.[3]

---

[1] Bruna Horvath, *10 Women Have Sued the Tea App After User Photos Were Hacked and Leaked Online*, (Aug. 5, 2025), https://www.nbcnews.com/tech/social-media/10-women-sued-tea-app-photos-hacked-leaked-online-rcna222880.

[2] *Update Regarding Cybersecurity Incident*, TEA, https://www.teaforwomen.com/cyberincident (last visited September 18, 2025).

[3] Cole also made no attempt to protect his client's privacy by filing her complaint under a pseudonym.

2
RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL

Cole's complaint is rife with other boilerplate and incorrect allegations reflecting the use of a stock complaint with minimum effort or investigation. *E.g., id.* ¶ 36 ("According to the Data Breach Notification and/or publicly filed documents, Representative Plaintiff states, on information and belief, that thousands/millions of persons were affected . . . ."); ¶ 39 (claiming Tea began to send notice, "long after it claims to have discovered the Data Breach," providing "basic details" of the data breach and "recommended next steps"—despite the passage of a single business day and no notice letters having been sent); ¶ 41 (discussing the use of "malware," which did not occur). Similarly, Berry's complaint makes a passing allegation regarding a ransom demand or payment—which did not, based on any public account, occur in this case. 3:25-cv-06336, ¶ 42. In sum, the substance of their complaints should weigh against Cole/Berry's appointment as lead counsel.

Like their complaints, Cole/Berry's leadership application reveals a lack of investigation and a fundamental misunderstanding of the nature of the case: It refers to Tea's data disclosure as a "hack" four times on the first page alone. ECF No. 44 at 1. The disclosure at issue here was not a hack. It did not require cybercriminals to breach firewalls, steal credentials, or access internal systems. Rather, Tea disclosed the data by leaving it publicly accessible on the internet. ECF No. 49 (amended complaint), ¶¶ 11-12, 156-160. *See also* 3:25-cv-06325, ECF No. 1 (original complaint filed by Ms. Wolfson), *e.g.*, ¶¶ 7-8, 41-43. This distinction is not merely a matter of semantics, Cole/Berry's framing is factually inaccurate and undermines the plaintiffs' claims—including those for negligence, violations of the Driver's Privacy Protection Act (DPPA), and punitive damages.

Moreover, since filing their complaints, Cole/Berry have invested their efforts into politically jockeying for other firms' support for lead, while attempting to derail Ms. Wolfson's efforts to move the case forward. That conduct continues in their application, as they make false insinuations around the motion to consolidate.

On August 1, 2025, after understanding that defendant X would oppose consolidation, Ms. Wolfson's team circulated a draft consolidation motion to Cole/Berry, Yanchunis, and all other plaintiffs' counsel inviting their edits and feedback; the other applicants for lead counsel did not respond. Wolfson Decl. ¶ 3. Ms. Wolfson and her team invited all counsel to join a call on August 6, 2025, to discuss consolidation and other organizational matters; the other applicants for lead counsel

3

RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL

1  did not attend. *Id.* ¶ 4. All those in attendance agreed that consolidation was appropriate and they had
2  no edits to the motion. *Id.* Ms. Wolfson's team again circulated the draft motion on August 6, noting
3  that it would be filed within the hour, unless others needed more time to review. *Id.* ¶ 5. Ms. Wolfson's
4  team held the motion at Berry's request for more time. *Id.* ¶ 6. Only later that day did Berry respond
5  that he "just spoke to defense counsel" (for Tea) about a stipulation. *Id.* Ms. Wolfson reminded him of
6  the other, non-stipulating defendants, and her team filed the motion. *Id.* There was no basis to delay
7  consolidation, and the Court agreed after reviewing the parties' briefing.

8       Nevertheless, Cole/Berry continued to insist, even after Doe's motion to consolidate was filed,
9  and after being reminded that defendant X would oppose, that plaintiffs should file a stipulation, even
10 with Tea alone. At every turn, Ms. Wolfson promptly and politely responded that a stipulation that did
11 not include all defendants was not appropriate, and would unnecessarily multiply filings and create a
12 confusing record. This is but one example of how Cole/Berry's actions thus far wasted the parties'
13 resources without advancing the case.

14      Mr. Yanchunis's application also demonstrates that he has not performed as much work—or
15 with as much efficiency—as Ms. Wolfson. He filed the seventh related case in this action. No. 3:25-
16 cv-06457. That complaint claims that the class consists of 4.6 million people—i.e., every single user
17 of the Tea app (*id.* at ECF No. 1 ¶¶ 19, 103). But, according to all publicly available information, only
18 a specific subset of users was impacted. Furthermore, neither the claims nor the parties Mr. Yanchunis
19 included in his client's complaint are as comprehensive as those named by Ms. Wolfson on behalf of
20 her own clients. In addition, the Yanchunis case was related on August 6, 2025, following an August
21 1, 2025, motion by Ms. Wolfson's team. ECF Nos. 9, 16. He nevertheless filed a motion to relate his
22 case on August 8, 2025, unnecessarily duplicating filings and causing inefficiency. ECF No. 24.

23      Ms. Wolfson has advanced this case efficiently, effectively, and with the plaintiffs' interests at
24 the forefront of every decision.

25      **B.    Cole/Berry's objection to Ms. Wolfson's advancement of her clients' interests
26           shows they are not the best choice to represent the class.**

27 Cole/Berry object to Ms. Wolfson's appointment in part because she moved to consolidate
28 because of "[her] *client's* desire to move the case forward." ECF No. 44 at n.1 (emphasis in original).

According to Cole/Berry, "clients (who are not licensed attorneys) should not be directing litigation strategy." *Id*. Clients absolutely have the right to be informed about and give input on litigation strategy. And if Cole/Berry are not willing to represent the clients' interests, they should not be appointed to lead this case.

California Rule of Professional Conduct 1.2(a) states that a lawyer must "abide by a client's decisions concerning the objectives of representation and, as required by rule 1.4, shall reasonably consult with the client as to the means by which they are to be pursued." Likewise, Rule 1.4(a) requires lawyers to "reasonably consult with the client about the means by which to accomplish the client's objectives in the representation." And Rule 1.4(b) requires lawyers to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

While attorneys of course have a degree of leeway in determining strategy, it is wholly inappropriate to disregard clients' rational and justified input—especially to favor an attorney's desire to exert some sort of administrative control over other attorneys, at the expense of clients' personal privacy, mitigation of damages, and timely resolution of their claims. Cole/Berry's arguments call into question their "ability to fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(1)(B).

### C.   The timing of the complaints' filings favors appointing Ms. Wolfson.

The Cole/Berry motion notes that Cole "filed the first case in the nation against Tea," contending that "the first-to-file" is an "objective tie-breaker" when Rule 23(g)(1)(A) factors do not favor any one applicant. ECF No. 44, n. 3. *But see Lowery v. Spotify USA Inc.,* No. 15-cv-09929, 2016 WL 6818756, at *3 (C.D. Cal. May 23, 2016) ("it would be an abuse of discretion to appoint an attorney as class counsel solely because he may have won the race to the courthouse") (citations and internal quotation marks omitted). Ms. Wolfson filed Jane Doe's complaint mere hours after Cole, but with a world of additional substance. There is no need for a tiebreaker: Ms. Wolfson is more qualified to oversee this case, and she should be appointed lead counsel.

As to the other application for appointment as lead counsel: Mr. Yanchunis filed the seventh related action against Tea. *See* 3:25-cv-06457.

5
RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL

Ms. Wolfson, in contrast, filed the second action (and likely the first on behalf of a plaintiff with standing). That complaint was the first to include a DPPA claim and the only to name social media defendants—which also supports her appointment as lead counsel. *In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 367 (E.D. Pa. 2022) ("If one plaintiff files first, but another plaintiff and their counsel perform more substantial post-filing investigation and development of the claims, then the later-filing plaintiff may have shown that they are better suited to represent the interests of the class in the interim.") (citation omitted). Thus, to the extent timing is of any relevance—it favors Ms. Wolfson.

### D. Cole/Berry's claimed "support" is both disingenuous and irrelevant.

Cole/Berry claim that "[n]early all of the firms that have filed against Tea support" appointing Cole/Berry. ECF No. 44 at 2. They miss the mark both factually and legally.

In support of this contention, Cole/Berry cites eight cases in which plaintiffs' counsel purportedly support Cole/Berry's appointment as lead. ECF No. 44, n.2; ECF No. 44-2, Berry Decl., ¶ 4. Half of those cases were filed by the same counsel (John Nelson with Milberg). *See* Case Nos. 3:25-cv-06363; 4:25-cv-06376; 3:25-cv-06433; and No. 3:25-cv-06669. One of those cited cases was filed by John Yanchunis, who has filed his own motion to be appointed lead counsel. *See* Case No. 3:25-cv-06457. Another of those cases was dismissed. *See* Case No. 4:25-cv-06538 (erroneously cited by Cole/Berry as 4:25-cv-96538). Counsel in yet another case Cole/Berry cite (Case No. 3:25-cv-06445) informed Ms. Wolfson that they are "neutral" on the appointment of lead counsel. Wolfson Decl. ¶ 7. Bursor & Fisher, counsel in Case No. 3:25-cv-06559, which Cole/Berry does not mention, supports the appointment of Ms. Wolfson. ECF No. 47. And Cole/Berry makes no mention of the other related case (Case No. 3:25-cv-06722). The record simply does not support Cole/Berry's claim.

More importantly, the "appointment of counsel 'is not supposed to be a popularity contest, and the number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g).'" *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 12-md-2380, 2013 WL 183855, at *3 (M.D. Pa. Jan. 17, 2013) (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006)). Indeed, "voluntary agreements among lawyers may create cartel-like groupings that favor some lawyers and disfavor others. . . ." *Third Cir. Task Force Report on the Selection of Class*

6

RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL

*Counsel*, 208 F.R.D. 340, 348 (3d Cir. 2002). Cole/Berry contend that they "have already begun to collaborate, organize and direct the group of firms seeking to participate in this litigation . . . ." ECF No. 44-1, Cole Decl., ¶ 6. But as explained above with respect to consolidation, these firms have not collaborated toward the best interest of the class, but instead multiplied proceedings for their own perceived benefit. Moreover, this case is not so complex as to warrant a two-firm leadership team, let alone an additional "group of firms" lined up to participate. Appointment of interim lead counsel should prioritize the best interests of the plaintiffs and the class, not the lawyers who wish to participate.

### E. Ms. Wolfson is more experienced and knowledgeable than Cole/Berry.

"If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). All of the applicants for lead counsel put forth resumes reflecting decades of experience representing plaintiffs in class actions. Ms. Wolfson's resume, in particular, reflects myriad leadership roles in landmark class actions, including data breach cases, achieving settlements in excess of $50 million. Neither Cole's nor Berry's application reflects comparable experience. *Compare* ECF No. 46-1 (Wolfson) *with* ECF No. 44-1 (Cole) and ECF No. 44-2 (Berry).

While Mr. Yanchunis' qualifications are impressive, Ms. Wolfson is still the best candidate to lead this case because of all the work she has already dedicated to it, as set forth above.

### F. The Court should appoint Ms. Wolfson to serve as interim lead counsel.

Ms. Wolfson has personally dedicated herself to vindicating the rights of the victims of the Tea data disclosure, and she is best suited to do so. She has nearly 30 years of experience representing plaintiffs in class action cases. She has successfully led countless data privacy cases to substantial results. She has done the most work thus far for the class. She has demonstrated her qualifications, fairness, and efficiency. And she is the attorney best able to represent the interests of the class.

Dated: September 23, 2025            Respectfully submitted,

                                     */s/ Tina Wolfson*
                                     Tina Wolfson (SBN 174806)

7
RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL

*twolfson@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Alyssa D. Brown (SBN 301313)
*abrown@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Melissa Clark (*pro hac vice to be filed*)
*mclark@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

*Counsel for Plaintiff Jane Doe and the Proposed Class*

8
RESPONSE IN FURTHER SUPPORT OF APPLICATION TO APPOINT TINA WOLFSON AS INTERIM LEAD COUNSEL