Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

Bethany G. Lukitsch (SBN 314376)
blukitsch@bakerlaw.com
Kamran B. Ahmadian (SBN 314566)
kahmadian@bakerlaw.com
Alexis Cruz (SBN 312842)
acruz@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 820-8800
Facsimile: (310) 820-8859

*Attorneys for Defendant*
TEA DATING ADVICE, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TEA DATING ADVICE DATA BREACH LITIGATION<br><br>This Document Relates to: All Actions | Case No. 3:25-cv-06321-WHO<br><br>**AMENDED JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Judge: Hon. William H. Orrick<br><br>**Case Management Conference**<br>Date: January 6, 2026<br>Time: 2:00 p.m.<br>Place: Zoom |

The parties to the above-entitled action jointly submit this AMENDED JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9. The parties initially submitted their Joint Case Management Statement on November 18, 2025. ECF No. 71. That same day, the Case Management Conference was reset to January 6, 2026, and a new Case Management Statement deadline was set for December 30, 2025. ECF No. 70. The parties submit this amended statement with (1) updates to the case status and (2) amendments to their previously proposed dates. This amended statement is a comprehensive Case Management Statement, and the parties' November 18, 2025, version can be disregarded.

## I. JURISDICTION AND SERVICE

The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, § 28 U.S.C. § 1322(d), because this is a class action with more than 100 proposed class members, the putative class members have different citizenship from defendants, and their claims are alleged to exceed $5,000,000. In addition, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Consolidated Complaint asserts a claim under the Driver's Privacy Protection Act, 18 U.S.C. § 1331, which is a federal statute providing a private right of action.

The parties do not anticipate any issues as to jurisdiction or venue.

Defendant Tea Dating Advice, Inc. ("Tea") has been served in all consolidated cases in this District.

## II. FACTS

Plaintiffs' Statement:

This case arises from a data disclosure Tea experienced on or about July 25, 2025 ("Data Incident").

Tea operates a mobile application and online platform marketed as a "dating advice" and safety tool exclusively for women. Tea was intended to create a space where women could anonymously share their dating experiences and warn each other about problematic men, without fear of retaliation from the men they were commenting about. To use Tea, users were required to submit a photo of their driver's license and additional identity verification information through the Tea Platform, which Tea

1

promised to destroy upon completion of the verification process. However, on July 25, 2025, Tea's entire database of user verification data—72,000 images including government-issued IDs and verification photos—sat completely exposed on the internet, accessible to anyone with a web browser.

The disclosure was discovered by 4chan users, who created automated scripts to systematically download all the exposed data. Following the 4chan posts, the stolen data was then disseminated further on social media, including the X platform (formerly Twitter), often containing searchable databases linking women's real identities to their anonymous posts. Many of the posts regarding the Data Incident were rife with overt threats of violence and harassment.

The information that the Plaintiffs provided to Tea during the verification process (whether it be via a driver's license, passport, and/or other identity verification) was stolen in the Data Incident and has been disseminated on social media. The Data Incident has exposed the Plaintiffs to danger from the very people they were warning others about, and from other nefarious actors who sought the Data Incident victims' personally identifiable information (PII) in order to embarrass, harass and threaten them.

Further, based on the findings of an independent researcher, it was revealed that approximately 1.1 million direct messages (DMs) spanning from early 2023 through July 2025 were also exposed. These included highly sensitive conversations about abortions, cheating, phone numbers, meeting info, and more.

Plaintiffs bring causes of action for negligence, negligence *per se*, invasion of privacy, breach of implied contract, violation of the Driver's Privacy Protection Act, violation of California's Unfair Competition Law, declaratory and injunctive relief, violation of the California Consumer Records Act, violation of the California Consumer Privacy Act, violation of New York General Business Law § 349, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, violation of the North Carolina Unfair and Deceptive Trade Practices Act, and violation of the North Carolina Identity Theft Protection Act.

Each of these causes of action is generally premised on Tea's failure to provide adequate data security for the PII they had an obligation to protect.

Tea's Statement:

Tea operates a mobile application and online platform that provides women with tools (background checks, criminal record checks, and reverse image searching), real-time insights, and a community to navigate the modern dating world with greater knowledge, confidence, and control (the "Tea Platform").

On July 25, 2025, Tea learned that unauthorized third-party actors gained access to a Firebase file storage environment that contained a discrete set of user-provided verification photos and user-generated content (including images of government issued IDs) collected during a brief, early verification period between January 2023 and February 2024 when the Tea Platform had fewer than 30,000 users.[1] Upon discovering the unauthorized access, Tea immediately reviewed access configurations for the Firebase file storage location and severed all external access to these records. within 15 minutes. Upon review, it was determined that the accessed files contained information meeting the definition of "personal information" under applicable state data breach notification statutes for 4,244 individuals. On August 28, 2025, Tea notified each of those affected individuals and provided, at no cost, two years of identity monitoring and credit monitoring services (including dark-web monitoring) through CyEx Financial Shield.

In the early morning of July 26, 2025, Tea learned of a second, unrelated incident: a security researcher gained unauthorized access to a Firestore database housing Tea Platform direct messages. The security researcher claimed to have accessed over one million Tea Platform direct messages comprising of approximately 100,000 chat threads, some of which were reported to contain sensitive information. Tea immediately launched an investigation, took the database offline and disabled all external access to the direct message functionality, including for Tea Platform users. Tea then made configuration changes to the Firestore database rules to eliminate the condition discovered and exploited by the security researcher. Tea learned that the direct messages illegally obtained by the security researcher were sent to a single media company and he did not disseminate them further. A

---

[1] Tea has experienced significant growth since that period. For context, as of July 2025 the Tea Platform had been downloaded by over 16 million individuals.

review of the direct message data did not include any information which required notification to any individual under state data breach notification laws.

Collectively, these two events are referred to as the "Data Incident."

### III. LEGAL ISSUES

The parties anticipate that the major legal issues will include: (1) whether Plaintiffs have stated any claim against Tea upon which relief can be granted; (2) whether the Driver's Protection Privacy Act, 18 U.S.C. § 2724 applies to non-governmental entities; (3) whether Plaintiffs and putative class members have suffered a concrete and cognizable injury; (4) whether Plaintiffs and putative class members are entitled to monetary or injunctive relief, and the nature of such relief; and (5) whether this action can be maintained as a class action under Rule 23.

### IV. MOTIONS

The parties anticipate that Tea will file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), which Plaintiffs will oppose.

Tea will likely file motions for summary judgment as to Plaintiffs' individual claims, and if necessary, the class-wide claims. Plaintiffs believe pre-certification summary judgment motion practice may be inappropriate, depending on its timing and scope, and reserve the right to oppose the filing and timing of such a motion. Plaintiffs further reserve the right to contend that, by moving for summary judgment before a class has been certified, Tea waives any arguments as to one-way intervention. The parties agree to confer before the filing of any pre-certification dispositive motion, and will raise any dispute regarding the timing of such a motion prior to its filing.

The parties anticipate that Plaintiffs will file (and Tea will oppose) a motion for class certification pursuant to Fed. R. Civ. P. 23.

The parties note the potential for discovery-related motions as disputes arise or as the parties seek leave to depart from limitations set forth by the Federal Rules of Civil Procedure, though they do not currently have or anticipate any such disputes.

### V. AMENDMENT OF PLEADINGS

Plaintiffs filed a Consolidated Class Action Complaint on December 23, 2025, after the informal exchange of discovery to attempt to narrow issues before the Court in the anticipated motion to dismiss.

The deadline for amending the Consolidated Class Action Complaint is provided in the proposed schedule below.

Plaintiffs do not currently anticipate dismissing any parties, claims, or defenses. Since the filing of the first Case Management Statement, Plaintiffs voluntarily dismissed Defendant X. Corp. without prejudice.

### VI. EVIDENCE PRESERVATION

The parties have reviewed the ESI Guidelines and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### VII. DISCLOSURES

The parties exchanged initial written disclosures on November 18, 2025.

### VIII. DISCOVERY

Plaintiffs have served requests for the production of documents and interrogatories. Both parties anticipate taking depositions and serving further written discovery. The parties do not currently anticipate any limitations or modifications of the discovery rules, beyond what they may include in a stipulated e-discovery order, protective order, or other discovery related protocols and stipulations.

The parties anticipate entering into a stipulated ESI protocol and have exchanged a draft of that document. They plan to submit this proposed protocol pursuant to the schedule set forth below. If an agreement cannot be reached, they will submit a joint letter identifying the areas of dispute, and attaching the stipulated ESI protocol identifying the disputed provisions.

They also anticipate filing a stipulated protective order (or raising any disputes on such an order) on the same timeline, and have exchanged a draft of that document as well.

At this time, the parties have not identified any discovery disputes.

### IX. CLASS ACTIONS

Plaintiffs' Statement:

Plaintiffs will move, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and potentially 23(c)(4), for the certification of one or more classes, to be defined in the Consolidated Class Action Complaint, including a nationwide class of persons whose personal information was disclosed in the Data Incident. Plaintiffs intend to seek class certification after the completion of necessary fact and expert discovery and in accordance with the schedule proposed below.

Plaintiffs will argue, for example, that all Plaintiffs and Class members were injured by a single data incident, caused by Tea's uniform disclosure of their data, including personally identifying information it promised not to retain at all. They will further contend that common evidence—Tea's own documents and testimony—will be used to establish liability, and that Plaintiffs are entitled to statutory damages as well as other damages subject to a single, class-wide damages model. Plaintiffs also reserve their right to contend under Fed. R. Civ. P. 23(c)(4) that various issues of liability are suitable for class certification, even if individualized trials are required on other issues, though they do not currently anticipate that being the case.

Tea's contentions below do not raise individualized issues that defeat certification, are not a reasonable interpretation of Plaintiffs' allegations, and are not relevant to the merits. For example, Plaintiffs and Class members were harmed when they experienced widespread harassment, threats of violence against all Tea users, and had their personal locations publicly posted, regardless of their "personal backstory." As another example, the Driver's Privacy Protection Act protects personal information from a motor vehicle record, i.e., a governmental identification card, and makes no exception based on expiration dates, outdated information, or partial redactions of other information. Plaintiffs are confident that common issues will predominate.

Tea's Statement:

Tea will oppose class certification on a number of grounds. This is not a typical data incident where each putative class member joined the Tea Platform for similar reasons, had the same or very similar information accessed and/or shared in the same way or allegedly suffered the same or similar

types of harm. Consequently, in addition to the typical arguments asserted in defense of certification in a data breach case, here, individual issues will overwhelmingly predominate over any common questions. For example, the PII derived from images of government-issued IDs uploaded by new users in the early days of the Tea Platform varied—government-issued IDs from different localities have different identifying information, some users blacked out or covered their personal information and/or photos, and even others used an old or expired government-issued IDs that depicted dated or inapplicable information. Furthermore, based on allegations in the complaint, the spectrum and types of alleged harm including tort damages (i.e., emotional distress, fear of retribution) are too wide-ranging to be suitable for class certification. Indeed, potential putative class members who perhaps joined out of pure curiosity and did not make any posts on the Tea Platform are very different from users that may establish a personal backstory to joining the Tea Platform such that the release of any PII has caused them substantial fear of retaliation from a post or report they made on the Tea Platform. These are just a few of the individualized issues that would preclude class certification.

### X. RELATED CASES

Pursuant to ECF No. 42, the previously related cases in this action were consolidated on September 9, 2025. Another case against Tea, entitled *Karam et al. v Tea Dating Advice, Inc.,* Case No. 25-cv-9071, was consolidated on November 3, 2025. *See* Case No. 25-cv-9071, ECF No. 17.

### XI. RELIEF

Plaintiffs' Statement:

Plaintiffs have filed a Consolidated Class Action Complaint for damages, statutory damages, injunctive relief, and equitable relief to address harms alleged to have been caused by the Data Incident, and Defendants' alleged dissemination of Plaintiffs' private information, including PII, drivers' license numbers, and posts. ECF No. 79.

The calculation of damages is subject to further investigation, discovery, and expert testimony.

Tea's Statement:

Tea denies that every Plaintiff and any putative class member suffered any injury and denies that every Plaintiffs or putative class member is entitled to any (or all) of the requested relief.

Moreover, Tea denies that Plaintiffs have (or will be able to) bring claims under each statute or are entitled to statutory damages.

## XII. SETTLEMENT AND ADR

The parties have met and conferred in compliance with Local Civil Rule 16-8(b) and ADR Local Rule 3-5.

The parties agree that mediation is the appropriate ADR process for this case and have scheduled a mediation for January 21, 2026.

In conjunction with early mediation, the parties anticipate engaging in discovery, including, for example, the following:

- **The Data Incident:** Analyses and information about the Data Incident itself, including when, how, and why it occurred.

- **Scope of Potential Class:** Information about the individuals whose PII was involved in the Data Incident and who were notified of the Data Incident, and whether named Plaintiffs were part of the notification population;

- **Tea's Data Storage Policies and Locations at time of Data Incident:** General information regarding the Impacted Systems and Tea's data security policies and procedures at time of Data Incident for those Systems;

- **Tea Direct Message Analysis:** Information regarding the publication and dissemination of the Tea Direct Messages or lack thereof;

- **Post-Data Incident Changes by Tea:** Information about any changes made to Tea's application, its databases, its data platforms, its website, or the Impacted Systems to address the Data Incident;

- **Damages of Named Plaintiffs and Class**: Information about any damages alleged to be suffered by Named Plaintiffs and any categories of damages sought on behalf of the class(es); and

- **Causation**: Information regarding access to any PII alleged to be the basis of Plaintiffs' claims.

The parties have already begun to engage in informal, pre-mediation discovery.

## XIII. OTHER REFERENCES

At this time, the parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

At this time, the parties have not identified any issues that can be narrowed by agreement or motion but remain open to meeting and conferring regarding this issue.

The parties identify the following issues as being the most consequential to the case:

- Tea's data security policies, procedures, and practices, in particular, as they pertain to the systems that were infiltrated by unauthorized third parties in the Data Incident;

- How the Data Incident occurred;

- The persons impacted by the Data Incident (including their demographic information and the PII that may have been impacted); and

- The claimed damages or other impacts on persons by the Data Incident.

The resolution of these issues may be expedited by the production of discovery identified above regarding discovery aimed at positioning the parties to negotiate a resolution.

## XV. EXPEDITED TRIAL PROCEDURE

At this time, the parties do not believe the case is suitable for expedited trial.

## XVI. SCHEDULING

The parties agree that discovery is open now and further agree to comply with their discovery obligations in good faith. Conditioned upon that agreement, the parties propose the following schedule:

| Event | Proposed Deadline |
|---|---|
| Parties to file Proposed ESI Protocol and Proposed Protective Order | January 12, 2026 |
| Tea's Response to Plaintiffs' Consolidated Complaint | January 22, 2026 |
| Plaintiffs' Opposition to any Motion to Dismiss the Consolidated Complaint | 30 days after the filing of the Motion to Dismiss |
| Tea's Reply in Further Support of any Motion to Dismiss the Consolidated Complaint | 15 days after the filing of the Opposition to the Motion to Dismiss |
| Initial ADR Session | 90 days after the filing of the Consolidated Complaint or as soon thereafter as the parties and their selected mediator is available |
| Deadline to Amend/Add parties | 4 months after the filing of an Answer, absent further leave of Court |
| Close of Fact Discovery | August 20, 2026 |

| | |
|---|---|
| Deadline to Move for Summary Judgment on Plaintiffs' Individual Claims[2] | September 11, 2026 |
| Plaintiffs' Class Expert Disclosures and Motion for Class Certification | October 20, 2026 |
| Tea's Class Expert Disclosures and Opposition to Motion for Class Certification | December 21, 2026 |
| Plaintiffs' Class Expert Rebuttal Reports and Reply in Support of Class Certification Motion[3] | February 19, 2027 |

Because the contours of this case may be impacted by the Court's order on Plaintiffs' motion for class certification, the parties believe it is premature to set deadlines or dates for merits expert discovery, class-wide summary judgement motions, or trial. Within 14 days of the Court's order on Plaintiffs' motion for class certification, the parties will meet and confer and submit a proposed schedule, addressing each of these items, to the Court.

XVII. **TRIAL**

Plaintiffs request a jury trial. Given the early stage of this case, it is too difficult at this time to estimate the length of any trial that might occur. Plaintiffs expect the class will be certified and anticipate that the trial could take 4-6 days, depending on the number of corporate designees, third party witnesses, and experts required. Tea notes that the length will depend on, among other things, whether a class is certified and what issues, if any, remain in the case at the time of trial.

XVIII. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties have filed Certifications of Interested Entities or Persons as required by Local Civil Rule 3-15.

XIX. **PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct.

---

[2] As noted above, Plaintiffs reserve their right to object to any such pre-certification summary judgment motion, and the parties agree to confer about that motion before it is filed.

[3] Any Rebuttal Report will be strictly limited to responding to Defendants' expert report and may not be used to introduce new opinions, damages models, or theories not included in the initial disclosure.

1  **XX. OTHER**

2      None at this time.

3  Dated: December 30, 2025                    Respectfully submitted,

/s/ *Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Alyssa D. Brown (SBN 301313)
*abrown@ahdootwolfson.com*
Sarper Unal (SBN 341739)
*sunal@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Melissa Clark (*pro hac vice*)
*mclark@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

/s/ *Bethany G. Lukitsch*
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Alexis Cruz (SBN 312842)
*acruz@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 820-8800
Facsimile: (310) 820-8859

*Counsel for Defendant* TEA DATING ADVICE, INC.

**CIVIL LOCAL RULE 5-1(I)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I attest that the content of this document is acceptable to counsel for plaintiffs and that I have obtained their authorization to affix their electronic signature to this document.

DATED: December 30, 2025                    */s/ Tina Wolfson*
                                            Tina Wolfson

## CASE MANAGEMENT ORDER

The above AMENDED JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

_____
HON. WILLIAM H. ORRICK
UNITED STATES DISTRICT JUDGE