1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
Alexis Cruz (SBN 312842)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
Emails:     *blukitsch@bakerlaw.com*
            *kahmadian@bakerlaw.com*
            *acruz@bakerlaw.com*

*Attorneys for Defendant*
TEA DATING ADVICE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TEA DATING ADVICE DATA BREACH LITIGATION<br><br>This Document Relates to: All Actions | Case No. 3:25-cv-06321-WHO<br><br>*[Assigned to Hon. William H. Orrick]*<br><br>**DEFENDANT TEA DATING ADVICE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed Concurrently with Declaration of Bethany G. Lukitsch; Declaration of Elizabeth Baradi; and [Proposed] Order]*<br><br>**Hearing Information**:<br><br>**Date:     April 1, 2026**<br>**Time:     2:00 p.m.**<br>**Dept:     8**<br><br>Action Filed:     July 28, 2025 |

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on April 1, 2026 at 2:00 p.m. in Courtroom 8 of the above-entitled Court, located on the 15th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Tea Dating Advice, Inc. ("Tea") will and hereby does move to dismiss Plaintiffs Jane Doe, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Doe 15, Jane Doe 16, Jane Doe 17, Jane Doe 18, Jane Doe 19, Jane Doe 20, and Jane Doe 21's (collectively, "Plaintiffs") Consolidated Class Action Complaint ("Motion"). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack Article III standing and 12(b)(6) because the Consolidated Class Action Complaint otherwise fails to state a claim against Tea upon which relief can be granted.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, and the Declarations of Bethany G. Lukitsch and Elizabeth Baradi filed concurrently herewith, as well as all pleadings, records, and papers on file with the Court, and such other arguments and evidence as may be presented at the hearing on this Motion.

Dated: January 29, 2026                                    Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    */s/ Bethany G. Lukitsch*
          Bethany G. Lukitsch
          Kamran B. Ahmadian
          Alexis Cruz

          *Attorneys for Defendant*
          TEA DATING ADVICE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

    A.    The Tea Platform ......................................................................................2

    B.    July 2025 Data Incident ...........................................................................2

        1.    Image Data Incident .....................................................................3

        2.    Chat Data Incident .......................................................................3

    C.    Plaintiffs' Allegations ...............................................................................4

III.  LEGAL STANDARD ............................................................................................4

IV.   LEGAL ARGUMENT ...........................................................................................5

    A.    Plaintiffs Fail to Allege Concrete Injury to Establish Article III Standing ...............5

        1.    Plaintiffs' Allegations of Hypothetical Future Harm Are Insufficient .........6

        2.    Plaintiffs' Allegations of Current and Past Harm Are Likewise Insufficient .........8

    B.    Plaintiffs Fail to Allege Cognizable Damage, a Necessary Element of Most Asserted Claims .........9

    C.    Plaintiffs' Statutory Claims Fail ............................................................12

        1.    Plaintiffs' Driver Protection Privacy Act Claim Fails as a Matter of Law .........12

        2.    Plaintiffs' California Consumer Privacy Act Claim Fails .........13

        3.    Plaintiffs' California Customer Records Act Claim Fails .........15

        4.    Plaintiffs' Remaining Statutory Claims Fail .............................................16

            a.    No "Deceptive" Acts or Practices Alleged as Required for New York General Business Law Claim .........16

            b.    The Illinois Consumer Fraud and Deceptive Business Practices Act Does Not Apply to Plaintiffs, and They Fail to Sufficiently Allege a Predicate Statutory Violation as Required .........17

            c.    Plaintiffs Do Not Allege Sufficient Facts to Support Their Claims Under the North Carolina Statutes .........18

    D.    Plaintiffs Do Not Sufficiently Allege Any Tort Claims .........................19

        1.    Plaintiffs' California Unfair Competition Law Claim Fails .........19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

a.    Plaintiffs Are Not Entitled to Equitable Relief under the UCL Because They Have an Adequate Remedy at Law ......................... 19

b.    Plaintiffs Lack Statutory Standing to Assert a UCL Claim ............. 19

c.    Plaintiffs Fail to Plausibly Allege Any Prong of the UCL ............. 20

2.    Plaintiffs' Invasion of Privacy by Intrusion Claim Fails ........................... 23

3.    Plaintiffs' Negligence and Negligence Per Se Claims Fail ....................... 24

V.    CONCLUSION ................................................................................................. 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

**Page(s)**

3

**Cases**

4

*Abdale v. North Sore Long Island Jewish Health Sys.*,
5    49 Misc. 3d 1027 (2015) ..........................................................................................17

6

*Aguilar v. Hartford Accident & Indem. Co.*,
2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ........................................................11
7

*Allen v. Vertafore, Inc.*,
8    2021 WL 3148870 (S.D. Tex. June 14, 2021) ........................................................13

9

*Andrews v. Sirius XM Radio Inc.*,
10    932 F.3d 1253 (9th Cir. 2019) .................................................................................12

11

*Antman v. Uber Techs.*,
    2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .....................................................7, 15
12

*Archer v. United Rentals, Inc.*,
13    195 Cal. App. 4th 807 (2011) ..................................................................................10

14

*Armstrong-Harris v. Wells Fargo Bank, N.A.*,
15    2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ........................................................21

16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................5
17

*Backhaut v. Apple, Inc.*,
18    74 F. Supp. 3d 1033 (N.D. Cal. 2014) .....................................................................21

19

*BCBSM, Inc. v. Walgreen Co.*,
20    512 F. Supp. 3d 837 (N.D. Ill. 2021) .......................................................................17

21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................5
22

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
23    353 F. Supp. 3d 1070 (D. Colo. 2018) .....................................................................17

24    *Bock v. Washington*,
    33 F.4th 1139 (9th Cir. 2022) .....................................................................................8
25

26    *Carcano v. JBSS, LLC*,
    200 N.C. App. 162 (2009) ........................................................................................18

27

*Castillo v. Seagate Tech., LLC*,
28    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........................................................10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Cel-Tech Comc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................................21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ....................................................................................................8

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ...............................................................21, 22

*Corona v. Sony Pictures Ent.*,
   2015 WL 3916744 (C.D. Cal. June 15, 2015) ..................................................9, 10

*Dalton v. Camp*,
   353 N.C. 647 (2001) ..................................................................................................18

*Damner v. Facebook Inc.*,
   2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .................................................9, 23

*Davis v. RiverSource Life Ins. Co.*,
   240 F. Supp. 3d 1011 (N.D. Cal. 2017) ...................................................................19

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ..................................................................................22

*Doe v. MKS Instruments, Inc.*,
   2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ...........................................................13

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .................................................15, 24, 25

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) .....................................................................21

*Enslin v. The Coca-Cola Co.*,
   136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*,
   739 F. App'x 91 (3d Cir. 2018) ...............................................................................13

*Fero v. Excellus Health Plan, Inc.*,
   502 F. Supp. 3d 724, 739-40 (W.D.N.Y. 2020) ................................................16, 17

*Ferry v. DF Growth REIT*,
   2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) .............................................................5

*Fontanez v. Skepple*,
   563 F. App'x 847 (2d Cir. 2014) ..............................................................................12

*Food Lion, Inc. v. Cap. Cities/ABC, Inc.*,
   964 F. Supp. 956 (M.D.N.C. 1997), *aff'd on other grounds*, 194 F.3d 505 (4th
   Cir. 1999) ..................................................................................................................10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ...........................................................21

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E.2d 1190 (N.Y. 2002).......................................................................16

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ...............................................6, 8, 9

*Griffey v. Magellan Health Inc.*,
2022 WL 1811165 (D. Ariz. June 2, 2022) ..................................................13

*Griffith v. Tik Tok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ..........................................................20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ..................................................................................23

*Holly v. Alta Newport Hosp., Inc.*,
612 F. Supp. 3d 1017 (C.D. Cal. 2020) ..........................................................9

*Horsley v. Kaiser Found. Hosps., Inc.*,
No. 24-5812, 2025 WL 3205857 (9th Cir. Nov. 17, 2025) .............................5

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024)..................................................11

*Huynh v. Quora, Inc.*,
2020 WL 7408230 (N.D. Cal. June 1, 2020) ................................................11

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ......................................................6, 9

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL
4592367 (N.D. Cal. Oct. 28, 2024)...............................................................23

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................10, 15, 22

*In re Am. Med. Collection Agency, Inc. Customer Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...................................................18

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........................................................10

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d. 953 (N.D. Cal. 2016) ...................................................10, 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

*In re Arthur J. Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022) ...................................................................18

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) .....................20

*In re Gilead Sciences Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .....................................................................5

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................................................20

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................23

*In re JUUL Labs, Inc., Marketing, Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ...........................................................16

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024) ...........................................................10

*In re Moveit Customer Data Sec. Breach Litig.*,
   2025 WL 2179475 (D. Mass. Jul. 31, 2025) .....................................................14

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
   748 F. Supp. 3d 262 (E.D. Pa. 2024) ...........................................................13

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ..........................................................24

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) .....................................................................17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................................20

*J'Aire Corp. v. Gregory*,
   598 P.2d 60 (Cal. 1979) ...........................................................................24

*Joseph v. J.J. Mac Intyre Cos., L.L.C.*,
   238 F. Supp. 2d 1158 (N.D. Cal. 2002) ..........................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................21

*Kisil v. Illuminate Educ., Inc.*,
   2025 WL 2589000 (9th Cir. Sept. 8, 2025) .....................................................6, 8

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) ....................................................................8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-06321-WHO

*Lau v. Gen Digital*,
    2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ...................................................20

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................4, 5, 7

*Patton v. Experian Data Corp.*,
    2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) ...............................................10, 18

*Price v. Apple*,
    2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ......................................................22

*Pruchnicki v. Envision Healthcare Corp.*,
    439 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ....................10

*Razuki v. Caliber Home Loans, Inc.*,
    2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ...............................................15, 16

*Rogers v. Keffer, Inc.*,
    243 F. Supp. 3d 650 (E.D.N.C. 2017).........................................................18, 19

*Rubio v. Cap. One Bank*,
    613 F.3d 1195 (9th Cir. 2010) .........................................................................21

*Ruiz v. Gap, Inc.*,
    2009 WL 250481 (N.D. Cal. Feb. 3, 2009), *aff'd*, 280 Fed. App'x. (9th Cir. 2010) ...................................................................................................20

*Ruiz v. Gap Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 680 (9th Cir. 2010) .................24

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ..................10

*Schmitt v. SN Serv. Corp.*,
    2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ....................................................23

*Schmitt v. SN Servs. Corp.*,
    2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ..................................................23

*Senne v. Vill. of Palatine, Ill.*,
    695 F.3d 597 (7th Cir. 2012) ..........................................................................13

*Sharpe v. Puritan's Pride, Inc.*,
    2019 WL 188658 (N.D. Cal. 2019) ..................................................................16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Siegler v. Best Buy Co. of Minnesota*,
    519 F. App'x 604 (11th Cir. 2013) ..................................................................12

*Sion v. SunRun, Inc.*,
    2017 WL 952953 (N.D. Cal. Mar. 13, 2017) ...............................................9, 11

*Smith v. Hoberg*,
    No. 18-CV-06279-JST, 2019 WL 13248005 (N.D. Cal. Oct. 29, 2019) ...................5

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .........................................................................19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .......................................................................5, 7

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 .....................................................................................24

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...............................................................10

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .........................................................................21

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .......................................................................................5

*Wilson v. Google LLC*,
    2025 WL 901941 (N.D. Cal. Mar. 25, 2025) ...................................................12

*Zapata Fonseca v. Goya Foods Inc.*,
    2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...................................................19

**Statutes**

18 U.S.C. § 2724(a) ...........................................................................................12

Cal. Bus. & Prof. Code § 17204 .........................................................................20

Cal. Civ. Code § 1798.82 ..............................................................................15, 21

Cal. Civ. Code § 1798.82(b) ...............................................................................15

Cal. Civ. Code § 1798.150(b) .........................................................................13, 14

California Consumer Privacy Act ..................................................................4, 13, 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ix

California Consumer Records Act ........................................................................................4, 15

Consumer Fraud Act .................................................................................................... *passim*

Consumer Records Act .......................................................................................................15

Customer Records Act ........................................................................................................15

Driver's Privacy Protection Act........................................................................1, 4, 12, 13

Illinois Consumer Fraud and Deceptive Business Practices Act ...................................4, 12, 17, 18

Illinois Personal Information Protection Act ...........................................................17, 18

N.C. Gen. Stat. Ann. § 75-65 ............................................................................................10

N.C. Gen. Stat. § 75-65(a) ................................................................................................19

N.Y. Gen. Bus. Law § 349..........................................................................................16, 17

North Carolina Identity Theft Protection Act ...........................................................4, 12, 18, 19

North Carolina Unfair and Deceptive Trade Practices Act ...............................4, 18, 19

**Rules**

Fed. R. Civ. Proc. 9(b) .......................................................................................................21

Fed. R. Civ. Proc. 12(b)(1) .............................................................................................1, 4

Fed. R. Civ. Proc. 12(b)(6) .............................................................................................2, 5

**Other Authorities**

California Constitution.........................................................................................................23

MalwarebytesLabs (Jul. 29, 2025)
    https://www.malwarebytes.com/blog/news/2025/07/tea-datingadvice-app-has-
    users-private ..............................................................................................................3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In late July 2025, Defendant Tea Dating Advice Inc. ("Tea") experienced unauthorized data intrusions (the "Data Incident") when bad actors, angered that women had a women-only space to discuss their dating experiences, openly urged a "hack and leak" of Tea.  While unfortunate, the Data Incident was limited in both size and scope and bears no resemblance to the sweeping, sensational narrative Plaintiffs[1] advance in their Consolidated Class Action Complaint ("Complaint").  The seventy-page Complaint leans heavily on early press articles and overheated and hyperbolic rhetoric, distorting the Data Incident beyond recognition and casting the breach as if it were an unprecedented catastrophe.  *See, e.g.*, Compl. ¶ 1 ("[O]ne of the most catastrophic and ironic data disclosures in the digital age.").  It was no such thing.  Although bad actors accessed a Firebase storage location containing approximately 68,725 images, ***only 4,244 Tea users*** had any reportable "personally identifiable information" ("PII") contained within those images.  And while a security researcher later accessed and downloaded a limited number of direct-message text threads, those messages contained no PII and, critically, ***have never been publicly released***.

In their Complaint, Plaintiffs assert thirteen causes of action against Tea, including common law claims such as Negligence and Invasion of Privacy, and various statutory claims including the Driver's Privacy Protection Act (the "DPPA").  But Plaintiffs fail to provide facts showing that they suffered actual harm, let alone a concrete injury.  And some Plaintiffs fail to allege they fall within the breach notice population, meaning they had no reportable PII exposed as part of the Data Incident.  Instead, Plaintiffs generally rely on vague, parroted allegations about a supposed "increased risk" of harm and other identical, nonspecific assertions unsupported by the factual detail required to sustain their theories.  Stripped of these conclusory statements, the Complaint rests entirely on a speculative chain of hypothetical future harms.  Because Plaintiffs do not plausibly allege a concrete

---

[1] Plaintiffs Jane Doe, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Doe 15, Jane Doe 16, Jane Doe 17, Jane Doe 18, Jane Doe 19, Jane Doe 20, and Jane Doe 21's (collectively, "Plaintiffs") are current and former Tea users from six states (California, Colorado, Illinois, New York, North Carolina, and Texas).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-06321-WHO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

injury-in-fact, they lack Article III standing, and the Complaint must be dismissed.

Even if some Plaintiffs can establish standing, the Complaint fails for the separate and independent reason that it does not plead facts supporting the essential elements of any of their claims. For every cause of action, Plaintiffs offer only generalized, formulaic assertions untethered to factual allegations about their own experiences, which are insufficient under Rule 12(b)(6). For these reasons, and for those discussed more fully below, the Court should dismiss the Complaint in its entirety and deny leave to amend.

## II.    FACTUAL BACKGROUND

### A.    The Tea Platform

Tea operates a mobile application and online platform that provides women with cutting edge tools (background checks, criminal record checks, and reverse image searching), real-time insights, and powerful community to navigate the modern dating world with confidence and control (the "Tea Platform"). *See* Compl. ¶ 125. The Tea Platform allows its users to exchange feedback on potential dating partners and more broadly share experiences regarding relationships. *See id.* ¶ 135. To maintain anonymity on the Tea Platform, its members use anonymous, self-selected usernames. *See id.* ¶¶ 1, 8. The Tea Platform was first launched in January 2023. *Id.* ¶ 135. During its first year, Tea only had a single employee (its founder) and a relatively small user base—approximately 24,000 users. Starting in early 2025, the user population began to experience significant growth. *Id.* ¶ 145. At one point, the Tea Platform application was the most downloaded application in the Apple App Store.[2] *Id.* Like many rapidly growing startups, Tea began to scale its operations to keep pace with its growing popularity.

### B.    July 2025 Data Incident

On or around July 24, 2025, anonymous users on a message board site (4chan) began advocating for a "hack and leak" of the Tea Platform. *Id.* ¶ 190. Shortly thereafter, Tea suffered two unrelated cybersecurity incidents that involved different file store locations and different data. *Id.* ¶¶ 3, 182. Together, these two events constitute the "Data Incident" that gives rise to this lawsuit.

---

[2] In October 2025, the Tea Platform mobile application was removed from the Apple App Store.

1.      **Image Data Incident**

On or about July 24, 2025, unauthorized criminal threat actors gained access to a Firebase file storage location that held a limited set of user uploaded images.  Compl. ¶¶ 3, 158.  In total, the Firebase file storage at issue held approximately 68,725 images (the "Image Data").  Upon review of the Image Data, Tea determined that it contained information meeting the definition of "personal information" under applicable state data breach notification statutes for 4,244 individuals.  *Id*. ¶¶ 15, 206.  For all but one individual (who uploaded their Social Security card) this "personal information" came from government-issued IDs uploaded by users to Tea for identity verification.  *Id.*  On August 28, 2025, Tea notified each of those affected individuals under applicable state laws and provided, at no cost, two years of identity monitoring and credit monitoring services (including dark web monitoring) through CyEx Financial Shield.  *Id.* ¶¶ 17, 181-83.

2.      **Chat Data Incident**

On July 25, 2025, a self-proclaimed "security researcher" examined the Tea Platform for potential vulnerability.  *See id.* ¶¶ 176, 187.  In online posts and comments to media outlets, the security researcher stated that although Tea's API was "very secure," he identified a condition that allowed him to query the Firestore database and exfiltrate certain Direct Messages (the "Chat Data").  *Id.* ¶¶ 184-187.  The security researcher provided the Chat Data to 404Media—an Internet news outlet—for the purpose of publishing an article about the Data Incident.  *See id.* ¶ 184 (citing Pieter Arntz, Tea Dating Advice app has users' private messages disclosed, MalwarebytesLabs, (Jul. 29, 2025)    https://www.malwarebytes.com/blog/news/2025/07/tea-datingadvice-app-has-users-private message s-disclosed ("[B]ut [the security researcher informed only Tea and 404Media about his latest work, providing enough information to confirm their findings.").  Plaintiffs do not allege—nor can they—that the Chat Data was disseminated to any other party.[3]  *See generally*, Compl.

---

[3] Tea was provided with the scripts used by the security researcher and was able to reproduce the search to identify all direct message threads implicated in the Data Incident.  After reviewing those threads, Tea determined that they ***do not contain any personal information*** that would require notification under any state data breach law.

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

C.    **Plaintiffs' Allegations**

Each of the twenty-one named Plaintiffs alleges that they were users of the Tea Platform prior to the Data Incident. *See, e.g.*, Compl. ¶¶ 20, 26, 31, 36. None of the Plaintiffs allege that Tea provided them with notice. *See generally*, *id.* However, several of the named Plaintiffs—Jane Does 1-2, 4-5, 7, 12-16, and 18-20—allege that a copy of their government-issued ID was "exposed" as a result of the Data Incident. *Id.* ¶¶ 20, 26, 36, 41, 46, 56, 81, 86, 91, 96, 101, 111, 116. Although they allege that they provided an image of their government-issued ID to Tea, Jane Does 3, 6, 8-10, and 21 ***do not allege*** that it was exposed in the Data Incident, nor could they as Tea has confirmed they are not in the notice population.[4] *Id.* ¶¶ 31, 51, 61, 66, 71; *see also* Declaration of Elizabeth Baradi ("Baradi Decl.") ¶¶ 1-4. Out of the twenty-one named Plaintiffs, only four Plaintiffs—Jane Does 13, 15, 20-21—allege that they sent direct messages through the Tea Platform that were allegedly exposed in the Data Incident. *See* Compl. ¶¶ 36, 86, 96, 121-122.

Based on these allegations, Plaintiffs assert thirteen causes of action on behalf of a putative Nationwide class and five putative subclasses: (1) Negligence; (2) Negligence *Per Se*; (3) Invasion of Privacy by Intrusion; (4) Breach of Implied Contract; (5) Violation of the DPPA; (6) Violation of California's Unfair Competition Law ("UCL"); (7) Declaratory and Injunctive Relief; (8) Violation of California Consumer [sic] Records Act ("CRA")[5]; (9) Violation of the California Consumer Privacy Act ("CCPA"); (10) Violation of New York General Business Law ("NYGBL"); (11) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (12) Violation of North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"); and (13) Violation of the North Carolina Identity Theft Protection Act ("NCITPA"). *Id.* ¶¶ 210-218; 227-387.

III.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. At the core of the Court's jurisdictional inquiry is Article III's standing

---

[4] Jane Doe 17 does not allege that she received notice from Tea, however, she alleges that she saw a "photo of her own driver's license, with her current address" on social media in a post regarding the Tea Incident. Compl. ¶ 107. Tea has not been provided that social media post.

[5] Plaintiffs incorrectly refer to the CRA (Customer Records Act) as the "Consumer Records Act." *See* Compl. ¶ 318.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-06321-WHO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    requirement.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).  Plaintiffs must have "(1)

2    suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

3    (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S.

4    330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61).  Where, as here, a case is "at the pleading stage,

5    the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*,

6    2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted).

7         To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual

8    allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

9    *Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his

10   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

11   elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

12   (holding threadbare allegations and conclusory statements are insufficient to withstand scrutiny).

13   Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that

14   would be otherwise applicable on a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Thus, the Court need

15   not "accept as true… allegations that are merely conclusory, unwarranted deductions of fact, or

16   unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

17   (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

18        The Court may grant a motion to dismiss without leave to amend "where a plaintiff's

19   proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."

20   *Horsley v. Kaiser Found. Hosps., Inc.*, No. 24-5812, 2025 WL 3205857, at *2 (9th Cir. Nov. 17,

21   2025) (int. quot. omitted); *see also Smith v. Hoberg*, No. 18-CV-06279-JST, 2019 WL 13248005, at

22   *4 (N.D. Cal. Oct. 29, 2019).

23   **IV.    LEGAL ARGUMENT**

24        **A.    Plaintiffs Fail to Allege Concrete Injury to Establish Article III Standing**

25        Plaintiffs lack Article III standing because they fail to allege they suffered any ***actual*** injury—

26   let alone harm that is concrete, particularized, or imminent.  *See TransUnion LLC v. Ramirez*, 594

27   U.S. 413, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory

28   violation.") (quoting *Spokeo, Inc.*, 578 U.S. at 341).  In the data breach context, "mere compromise

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022); *see also Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *2 (9th Cir. Sept. 8, 2025) ("Plaintiffs have not shown that identity theft has occurred, so Plaintiffs cannot assert standing for damages based on the risk of future harm of identity theft."). Rather than supply facts, Plaintiffs attempt to plead injury in two ways: (1) hypothetical future injuries, such as identity theft, phishing scams, or stalking that Plaintiffs ***might*** be subject to in the future; and (2) past/current "injuries," such as lost time and money for monitoring their information, lost value and control of their PII, and a "constant fear" of further attacks against them. Neither is sufficient to establish cognizable harm for any of the Plaintiffs, but especially for Jane Does 3, 6, 8-10, 17, and 21, because they were not part of the notice population, and even if their direct messages were implicated in the Data Incident, those messages contained ***no reportable PII*** and were never publicly disclosed.[6] *See* Compl. ¶¶ 31, 51, 61, 66, 71; *see also* Baradi Decl. ¶¶ 1-4.

### 1.    Plaintiffs' Allegations of Hypothetical Future Harm Are Insufficient

Whether a data security incident is likely to cause "real and immediate harm" rather than just "conjectural or hypothetical" harm turns on the kind of data impacted. *See Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227 (N.D. Cal. 2022) ("[P]laintiffs' Article III standing turned on whether the degree of sensitive information presented an imminent and credible risk of harm," and that "[t]he Ninth Circuit identifies types of future harm in data breach cases based on the types of personal information compromised."). Only incidents involving highly sensitive personal data, such as information that "provides hackers with a clear ability to commit fraud" (i.e., credit card numbers and expiration dates, or usernames and passwords), create a real and immediate risk of identity theft. *See id.* By contrast, incidents involving less sensitive information—even driver's license data—do not suffice because any potential misuse remains ***speculative***. *See Zynga*, 600 F. Supp. 3d at 1051 (finding information that could not be used to open bank accounts, apply for loans,

---

[6] Plaintiffs concede the impacted DMs are highly individualized. *See* Compl. ¶ 167 (alleging the DMs contain an array of discussions, including administration welcome messages and some potentially "about reproductive health, relationships, and personal safety").

1    or otherwise enable identity theft did not establish injury-in-fact).

2         Here, information contained on government-issued IDs is neither highly sensitive nor,

3    on its own, sufficient to put Plaintiffs at imminent risk of identity theft. *See Antman v. Uber Techs.*,

4    2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) ("Without a hack of information such as social

5    security numbers, account numbers, or credit card numbers, [and just names and driver's licenses],

6    there is no obvious, credible risk of identity theft that risks real, immediate injury.").  This is

7    particularly true for the DMs, which were not publicly released, contained only usernames and no

8    reportable PII.  Plaintiffs offer **zero** facts alleging their information has been misused, such as

9    receiving notice of identity theft, fraud, or any other improper activity.  Plaintiffs vaguely claim that

10   combining this information with the other supposedly "sensitive" data Tea collected creates "a perfect

11   package for identity thieves." See Compl. ¶ 155.  But they never identify what "sensitive" data they

12   mean or explain how data that was not involved in the Data Incident could create a credible risk of

13   identity theft. Their allegations are therefore conclusory and lack the factual detail necessary to

14   withstand a motion to dismiss. *See Sprewell,* 266 F.3d at 988 (holding the Court need not "accept as

15   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16   inferences").

17        Further, allegations pertaining to potential future physical harm—i.e., stalking or physical

18   attacks from aggrieved men based on anonymous posts made on the Tea Platform—are too attenuated

19   to establish concrete harm.  For example, Jane Doe 2 alleges that she joined the Tea Platform to "warn

20   other women about her child's father, who is a serial cheater and neglects his parental obligations."

21   Compl. ¶ 27.  She further alleges that *although she deleted her post before the Data Incident*, she

22   now fears that this man will discover it and retaliate against her.  *Id.*  But her fear has no causal

23   connection to the Data Incident.  *See Lujan*, 504 U.S. at 560-61 (holding Article III requires "a causal

24   connection between the injury and the conduct complained of…") (int. cit. and quot. omitted).  The

25   only reasonable inference that can be made from Jane Doe 2's purportedly impacted information—

26   an image of her government-issued ID—is that she created a Tea account sometime between January

27   2023 and February 2024.  This data does not establish anything about what she did while on the Tea

28   Platform, what her username was, whether she made any posts, or the content of any posts,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

7

particularly a post deleted before the Data Incident.[7]  If her child's father learns about the deleted post (assuming that is even possible), that discovery would have to come from some source other than the information potentially impacted in the Data Incident.  And even if the child's father did somehow learn about the post, the allegations provide no plausible basis to conclude that he is likely to retaliate or harm Jane Doe 2.  Such highly speculative allegations cannot constitute concrete harm.  *Bock v. Washington*, 33 F.4th 1139, 1144 (9th Cir. 2022) (finding no standing where plaintiffs merely "assert a risk of future harm").

### 2. Plaintiffs' Allegations of Current and Past Harm Are Likewise Insufficient

Plaintiffs vaguely allege injuries based on lost time and costs associated with monitoring and mitigating the impact of the Data Incident.  *See, e.g.,* Compl., ¶¶ 22, 33, 38, 43 ("She has spent and will spend considerable time and money on protective measures, including identity theft protection.").  But simply undertaking mitigation efforts is ***not*** sufficient to establish an injury.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (finding Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (holding an injury-in-fact may be found from mitigation costs ***only if*** the risk of identity theft is "real and immediate, not conjectural or hypothetical") (int. cit. omitted).  Plaintiffs do not allege any facts showing that their risk of identity theft was real and immediate; and that Tea's offer of identity monitoring services after the Data Incident (*see* Compl. ¶¶ 17, 183) was insufficient.  *See Kisil*, 2025 WL 2589000, at *2 ("Also, although [the defendant] provided access to monitoring services, it did so as 'an added precaution' and did not indicate that fraud was likely to occur.").  Even the two Plaintiffs—Jane Doe 4 and 12—who claim they froze their credit following the Data Incident (*see* Compl. ¶¶ 43, 83) still fail to allege facts showing such out-of-pocket expenses were reasonable and necessary.  *See Greenstein*, 585 F.Supp.3d at 1230-31 (finding that monitoring and mitigation costs constitute cognizable injury only if complaint ***only if*** complaint alleges facts establishing the reasonableness

---

[7] This would also be true for Plaintiffs with a direct message involved, as the non-published DMs were exchanged between anonymous usernames and contained no reportable PII.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    and necessity of those costs) (int. cit. omitted).

2    Plaintiffs also generally allege psychological harm, including "constant fear" of stalking,

3    retaliation, or embarrassment based on the Data Incident. *See, e.g.*, Compl. ¶¶ 29, 38, 191. However,

4    they fail to allege any facts that their emotional distress is justified by a risk of harm that is

5    "substantial" or "impending." *Zynga*, 600 F. Supp. 3d at 1052 (finding emotional damages were "too

6    conjectural such that they cannot qualify as concrete injuries of fact" for standing). Nor do Plaintiffs

7    support their claims with "something more than [their] own conclusory allegations, such as specific

8    claims of genuine injury" as required. *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026

9    (C.D. Cal. 2020) (citing *Sion v. SunRun, Inc.*, 2017 WL 952953, at *3 (N.D. Cal. Mar. 13, 2017)).

10    Plaintiffs' vague allegations of "diminution in value" and "loss of control" of their personal

11    information fare no better. To establish standing, Plaintiffs must show that the loss of value is not

12    arbitrary or hypothetical. *See Greenstein*, 585 F. Supp. 3d at 1229. Indeed, while personal

13    information can be "worth a certain amount of money" when disclosed, it does ***not*** follow that the

14    same information has independent economic value to an individual when not disclosed. *See*

15    *Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Thus,

16    Plaintiffs must, ***at a minimum****,* plausibly allege both that they intended to sell their information, and

17    that someone else would have bought their information. *See id.* Plaintiffs fail to allege either.

18    Moreover, simply losing control of one's data is insufficient to confer an injury—they must

19    demonstrate that someone specifically misused it. *See Corona v. Sony Pictures Ent.*, 2015 WL

20    3916744, at *4 (C.D. Cal. June 15, 2015). As discussed above, Plaintiffs do not allege any actual

21    misuse of their information.

22    Because Plaintiffs fail to establish concrete injury, Plaintiffs' Complaint should be dismissed

23    in full.

24    **B.    Plaintiffs Fail to Allege Cognizable Damage, a Necessary Element of Most**

25    **Asserted Claims**

26    Even if Plaintiffs sufficiently established Article III standing (they do not), eight of the

27    Complaint's causes fail because each requires Plaintiffs to plead cognizable injury as an element of

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the claim.[8]

**Future harm**: A *future* increased risk of identity fraud does not establish a cognizable injury because "California courts have indicated that speculative harm or the mere threat of future harm is insufficient to constitute actual loss." *Corona*, 2015 WL 3916744, at *3-4 ("To the extent Plaintiffs allege future harm or an increased risk in harm that has not yet occurred, those allegations . . . fail to allege a cognizable injury."); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 725 (N.D. Cal. 2014) (finding future risk of identity fraud too "too speculative" to show actual damages); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (under California contract law, a plaintiff "cannot show he was actually damaged by pointing to his fear of future identity theft").

**Lost time and costs**: Without any "tangible, out-of-pocket expenses," time spent obtaining credit reports, reviewing financial accounts, or otherwise attempting to mitigate a *hypothetical* future injury does ***not*** constitute a cognizable injury.   *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *see also Corona*, 2015 WL 3916744, at * 4 ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury."); *Castillo v. Seagate Tech., LLC*, 2016 WL

---

[8] *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1141 (C.D. Cal. 2021) (holding elements of negligence claim include damage); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (holding essential element of a claim for intrusion upon seclusion is injury, damage, loss or harm); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 815 (2011) (holding UCL claim requires injury-in-fact and suffering of lost money or property); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992 (N.D. Cal. 2016) (holding NYGBL claim requires showing of "actual, although no[t] necessarily pecuniary, harm"); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014) ("[W]here a plaintiff fails to allege a cognizable injury, the plaintiff lacks statutory standing to bring a claim under Section 1798.84."); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1013 (N.D. Cal. 2024) ("Only a person who suffers actual damages as a result of a violation of the Consumer Fraud Act may bring a private action."); *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 964 F. Supp. 956, 960 (M.D.N.C. 1997), *aff'd on other grounds*, 194 F.3d 505 (4th Cir. 1999) (holding NCUTPA "requires plaintiff, in order to recover damages, to show actual injury proximately caused by alleged wrongful conduct") (int. cit. omitted); *Patton v. Experian Data Corp.*, 2018 WL 6190349, at *11 (C.D. Cal. Jan. 23, 2018) ("No private right of action may be brought by an individual for a violation of [N.C. Gen. Stat. Ann. § 75-65] unless such individual is injured as a result of the violation.").

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-06321-WHO

9280242 (N.D. Cal. Sept. 14, 2016). As discussed above, Plaintiffs fail to plausibly allege that they incurred any actual costs, nor do they allege facts to support an inference that any actual costs were reasonable, necessary, or in relation to the Data Incident.

**Emotional Distress**: Emotional distress damages may be recoverable under California law in limited circumstances, but not for mere negligence in a data breach class action. *See Huynh v. Quora, Inc.*, 2020 WL 7408230, at *5 (N.D. Cal. June 1, 2020) (refusing to consider "emotional distress" as cognizable injury in a data-breach class action); *see also Sion*, 2017 WL 952953, at *2 (finding emotional distress is not a cognizable injury without "something more than [her] own conclusory allegations.") (int. cit. and quot. omitted); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) ("Emotional and physical distress damages are not recoverable on a California contract claim.").

**Loss of value and control**: While Plaintiffs summarily state they have suffered a diminution of value in their information (*see, e.g.*, Compl. ¶ 59), Plaintiffs must plead what economic value the allegedly transmitted information held *to them* and *how* that value was lost through Tea's alleged misconduct. *See Low.*, 900 F. Supp. 2d at 1032 ("[T]he Amended Complaint fails to allege how either Plaintiff was foreclosed from capitalizing on the value of his personal data."); *see also Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. Jul. 1, 2024) (granting motion to dismiss and finding no injury alleged where plaintiffs did not allege facts explaining how defendant's collection and use of plaintiffs' information reduced the value of that information). Indeed, the Complaint indicates that Plaintiffs have no interest in selling their data, as that would reveal information they claim is too private and sensitive to share with any third parties. *See, e.g.*, Compl. ¶¶ 148, 190, 207.

**Invasion of Privacy**: Plaintiffs' threadbare allegation that they were damaged by a loss of privacy due to the Data Incident (*see id.* ¶ 241) is also insufficient because the loss of privacy engendered by an accidental data breach cannot satisfy the necessary damage element "without specific factual statements that Plaintiffs' [PII] has been misused, in the form of an open bank account, or un-reimbursed charges." *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019) (int. quot. and cit. omitted); *see also Huynh*, 2020 WL 7408230, at *6.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Accordingly, Plaintiffs' First (Negligence), Third (Invasion of Privacy by Intrusion), Fourth (Breach of Implied Contract), Sixth (Violation of the UCL), Eighth (Violation of the CRA), Tenth (Violation of the NYGBL), Eleventh (Violation of the ICFA), Twelfth (Violation of the NCUFDTA), and Thirteenth (Violation of the NCITPA) Causes of Action should be dismissed for failure to allege damages.

### C.    Plaintiffs' Statutory Claims Fail

#### 1.    Plaintiffs' Driver Protection Privacy Act Claim Fails as a Matter of Law

Plaintiffs' DPPA claim fails from the very outset.  To survive a motion to dismiss, Plaintiffs must allege facts sufficient to show (1) Tea knowingly obtained, disclosed, or used personal information (2) from a motor vehicle record (3) for a non-permissible use.  18 U.S.C. § 2724(a); *see also Wilson v. Google LLC*, 2025 WL 901941, at *4 (N.D. Cal. Mar. 25, 2025).

Here, the personal information at issue involves images that Plaintiffs took of drivers' licenses in their possession (not a state agency's) and voluntarily shared with Tea to verify their identities. *See, e.g.*, Compl. ¶¶ 20-21, 26, 31, 42, 274 (alleging "[d]river's license numbers are motor vehicle records and 'personal information' under the DPPA").  However, the ***Ninth Circuit has unequivocally held that a driver's license is not a "motor vehicle record" for purposes of the DPPA***. *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1259-60 (9th Cir. 2019).  Citing the legislative intent behind the DPPA, the Ninth Circuit reasoned that a driver's license, "though issued by the DMV, becomes the possession of *an individual*, not the DMV that issued it." *Id.*  Put another way, where "the initial source of personal information is a record in the possession of an individual, rather than a state DMV, then use or disclosure of that information ***does not violate the DPPA***." *Id.* (emph. added); *see also Wilson*, 2025 WL 901941, at *5 (dismissing DPPA claim "[b]ecause the personal information that was allegedly transmitted to Google came from Plaintiff, it was not from a motor vehicle record").[9]  Because Plaintiffs do not allege (nor can they) that Tea impermissibly obtained

---

[9] Other circuits have interpreted the DPPA in a similar manner.  *See, e.g.*, *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014); *Siegler v. Best Buy Co. of Minnesota*, 519 F. App'x 604, 605 (11th Cir. 2013).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. 3:25-CV-06321-WHO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   their driver's licenses from a state DMV, the DPPA does not apply. *See Andrews*, 932 F.3d at 1262

2   ("[T]he DPPA was not designed to remedy every misuse of personal information that happened to

3   come from a driver's license. Instead, ***its scope is limited to impermissible disclosures by state DMVs***

4   to those who seek information from them.") (emph. added) (int. quot. omitted).

5      Even if Plaintiffs could allege qualifying personal information (they cannot), they have not

6   pled any facts that show Tea ***knowingly disclosed*** Plaintiffs' personal information.  A "knowing

7   disclosure" under the DPPA requires the defendant to take some "voluntary action" that reveals the

8   information.  *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015), *aff'd sub nom.*

9   *Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018) (citing *Senne v. Vill. of Palatine, Ill.*, 695

10  F.3d 597, 603 (7th Cir. 2012)).  Courts consistently hold that an unauthorized data breach—even

11  when data is allegedly stored insecurely—does not qualify as a voluntary disclosure under the DPPA.

12  *See id.* at 671; *see also Allen v. Vertafore, Inc.*, 2021 WL 3148870, at *1 (S.D. Tex. June 14, 2021),

13  *report and recommendation adopted*, 2021 WL 3144469 (S.D. Tex. Jul. 23, 2021), *aff'd*, 28 F.4th

14  613 (5th Cir. 2022) (dismissing DPPA claim where driver-license data was "inadvertently stored in

15  an unsecured external storage service" later accessed without authorization); *see also In re NCB*

16  *Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 280 (E.D. Pa. 2024).  Plaintiffs allege no

17  voluntary action by Tea, nor can they, since Tea was attacked by unauthorized bad actors.

18     Accordingly, Plaintiffs' DPPA claim should be dismissed with prejudice.

19      **2.**  **Plaintiffs' California Consumer Privacy Act Claim Fails**

20     As an initial matter, Jane Does 2, 3, and 20 are barred from asserting claims for statutory

21  damages under the CCPA because they do not allege that they provided Tea with ***any*** pre-suit notice.

22  *See* Cal. Civ. Code § 1798.150(b) (requiring consumer to provide the business with 30 days' written

23  notice identifying the specific CPPA provisions allegedly violated to seek statutory damages); *see*

24  *also Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (dismissing

25  CCPA claim and observing that "if a notice filed before the 30-day deadline could be updated when

26  an amended complaint is filed and satisfy the 30-day notice requirement, then having the pre-suit

27  notice requirement would be pointless").

28     Having waived their right to seek statutory damages, Plaintiffs Jane Does 2, 3, and 20 can

seek only "actual pecuniary damages." Cal. Civ. Code § 1798.150(b); *see also Doe v. MKS Instruments, Inc.*, 2023 WL 9421115, at *4 (C.D. Cal. Nov. 3, 2023). But as discussed above, Plaintiffs (including Jane Doe, who purportedly gave notice of her request for statutory damages to Tea) fail to allege any injury *arising from* Tea's purported CCPA violation. *See* § 1798.150(b) (consumer must sustain "actual pecuniary damages suffered as a result of the alleged violations of this title" prior to initiating an action for pecuniary damages). This deficiency alone defeats their CCPA claim.

Even if they had provided adequate notice, Plaintiffs are still barred from bringing a CCPA claim against Tea because Tea cured the alleged Firebase security issues identified in the Complaint, and Plaintiffs do not allege otherwise. Under California Civil Code section 1798.150(b), "[i]n the event a cure is possible, if within the 30 days the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, ***no action for individual statutory damages or class-wide statutory damages may be initiated against the business***." *Id.* (emph. added).

While Jane Doe purported to provide notice to Tea, Tea provided an express written statement to Plaintiffs' counsel that it cured any alleged CCPA violation and no further violations (to the extent any are found) shall occur.[10] *See* Declaration of Bethany G. Lukitsch ("Lukitsch Decl.") ¶¶ 1-2, Ex. A. Specifically, Tea informed Plaintiffs that it stopped uploading images, including verification photos to the cloud storage container at issue in or around February 2024, when Tea had less than 30,000 users nationwide. *See id.* Upon learning of the Data Incident, Tea immediately terminated external access to the relevant infrastructure, and changed internal credentials to the infrastructure, limiting access to a select few individuals. *See id.* Tea has therefore cured the vulnerability Plaintiff claims caused the breach. *See In re Moveit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *26 (D. Mass. Jul. 31, 2025) (dismissing CCPA claim because "[g]iven that implementing the patches is precisely what Plaintiffs say would have prevented the breach, the Court holds that this is

---

[10] As noted in Paragraph 336 of the Complaint, Plaintiff Jane Doe's notice did not include any identifying information that would have been sufficient for Tea to determine whether Plaintiff's information was included as part of the Data Incident.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    sufficiently specific to constitute a statement that the violation has been cured").

2    ###    3.    Plaintiffs' California Customer Records Act Claim Fails

3    Plaintiffs do not allege sufficient facts regarding Tea's purported failure to promptly notify

4    them of the Data Incident in violation of California Civil Code section 1798.82.  *See* Compl. ¶¶ 322-

5    23.  Section 1798.82 requires a qualifying business "[to] notify the owner or licensee of the

6    information of the breach of the security of the data immediately following discovery …."  Cal. Civ.

7    Code § 1798.82(b).  To state a claim under the CRA, Plaintiffs must allege specific and concrete facts

8    that demonstrate Tea unreasonably delayed notifying impacted individuals.  Plaintiffs must also

9    allege such facts that show "incremental harm suffered ***as a result of the alleged delay in***

10   ***notification***," as opposed to harm from the Data Incident itself.  *See Dugas v. Starwood Hotels &*

11   *Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016) (emph. added); *Antman*,

12   2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) ("[D]elay alone is not enough.") (int. cit.

13   omitted); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014).  Conclusory

14   allegations are insufficient to meet this requirement.  *See Razuki v. Caliber Home Loans, Inc.*, 2018

15   WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018).

16   Here, Plaintiffs merely allege the dates on which unauthorized third-party criminals

17   perpetrated the Data Incident (*see* Compl. ¶ 162), and Tea publicly announced the incident and

18   notified impacted individuals of the same (*id.* ¶¶ 174-76, 181).  But they allege no facts suggesting

19   that this timeline reflects anything other than "reasonable delay."  Moreover, while Plaintiffs allege

20   in vague and conclusory terms that they suffered harm "as a direct and proximate result" of Tea's

21   alleged violation of the CRA for not disclosing the Data Incident directly to the named California

22   Plaintiffs immediately upon discovery (*see id.* ¶¶ 322-24), they plead no facts showing that any

23   California Plaintiff's purported harm resulted from the ***timing*** of the notice rather than from the Data

24   Incident itself.[11]  Courts consistently require more, even at the pleading stage.  *See, e.g.*, *Razuki*, 2018

25   WL 6018361, at *2.

26

27   ----

28   [11] Before Tea could review the Image Data to identify which individuals' PII was involved in the
     Data Incident, news of the incident had already been widely publicized in the press and, as Plaintiffs
     acknowledge, Tea had also disclosed it on social media.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**4.      Plaintiffs' Remaining Statutory Claims Fail**

Plaintiffs assert four additional causes of action under various state consumer statutes, primarily alleging that Tea failed to implement basic security safeguards and failed to timely notify Plaintiffs of the Data Incident.  *See* Compl. ¶¶ 15, 340, 355, 366, 377.  All of these claims fail as a matter of law.  The New York, Illinois, and North Carolina statutes at issue require pleading of actual and cognizable damages.  *See* Section B.  As discussed above, Plaintiffs do not—and cannot—sufficiently allege immediate or concrete harm sufficient to satisfy this requirement. On this basis alone, the remaining statutory claims should be dismissed.

a.      <u>No "Deceptive" Acts or Practices Alleged as Required for New York General Business Law Claim</u>

Under Section 349 of the NYGBL, the phrase "deceptive acts or practices" means an "actual misrepresentation or omission to a consumer."  *Sharpe v. Puritan's Pride, Inc.*, 2019 WL 188658, at *2-3 (N.D. Cal. 2019) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)).[12]  While actual reliance—*i.e.*, that plaintiffs "would not otherwise have entered into the transaction"—is not required, consumers must at least allege that they were aware of the deceptive conduct and were "personally misled."  *See Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724,739-40 (W.D.N.Y. 2020) (collecting cases) (int. quot. omitted).  In the Ninth Circuit, Plaintiffs must allege those facts with ***particularity***.  *See, e.g.*, *In re JUUL Labs, Inc., Marketing, Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020).

Here, the sole New York Plaintiff, Jane Doe 11, does not allege review or reliance on ***any*** specific representation by Tea.  For example, she does not allege that she read Tea's Privacy Policy before using the Tea Platform (or ever), or that she read or relied on any of the marketing materials Plaintiffs depict as part of the Complaint.  *See generally* Compl.  As such, she cannot show that she was exposed to any misrepresentations relating to the security of her identification card (the only item plausibly pled as being involved in the Data Incident) such that she could have been misled.  *See*

---

[12] Although Plaintiffs attempt to allege Tea's practices are "unfair" (*see* Compl. ¶ 342), the statute only prohibits "deceptive acts or practices."  *See* NYGBL § 349. In any event, Plaintiffs offer no explanation for why any of Tea's conduct qualifies as "unfair" under the statute.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Fero*, 502 F. Supp. 3d at 740 ("[W]hile a plaintiff pursuing a [NYGBL] § 349 claim need not have relied on (or even necessarily have believed) the allegedly deceptive conduct, he or she must have at least been exposed to it."). Even if Jane Doe 11 had alleged she was aware of the Privacy Policy or materials, her claim would still fail because none of those documents contains an unqualified guarantee that Tea would delete her identification card or that it could not be stolen or hacked. *See Abdale v. North Sore Long Island Jewish Health Sys.*, 49 Misc. 3d 1027, 1039 (2015) (finding "[d]efendants' alleged failure to safeguard plaintiffs' protected health information and identifying information from theft did not misle[a]d the plaintiffs in any material way and does not constitute a deceptive practice within the meaning of the statute") (int. quot. and cit. omitted).

              b.    <u>The Illinois Consumer Fraud and Deceptive Business Practices Act</u>
                    <u>Does Not Apply to Plaintiffs, and They Fail to Sufficiently Allege a</u>
                    <u>Predicate Statutory Violation as Required</u>

      The Illinois Plaintiffs—Jane Does 6 through 10—base their ICFA claim on the Illinois Personal Information Protection Act ("IPIPA"). While it is true that a plaintiff can seek recovery for a violation of IPIPA through the ICFA, the ICFA ***does not*** apply extraterritorially and thus only applies if the alleged misconduct occurs "primarily and substantially in Illinois."[13] *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021). Here, Plaintiffs do not allege that Tea's purported misconduct occurred "primarily and substantially" in Illinois. In fact, they allege just the opposite—a "substantial part of the events or omissions giving rise to Plaintiffs' claims" occurred ***in California***. Compl. ¶ 133. "Because claims can 'substantially' occur only in one place," venue in this District and Plaintiffs' ICFA claims are mutually exclusive. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1093 (D. Colo. 2018); *see also BCBSM, Inc.*, 512 F. Supp. 3d at 856 (dismissing ICFA claim where only allegation relating to Illinois was that the plaintiff is an Illinois resident).

      Even if the ICFA did apply here (it does not), Plaintiffs fail to plausibly allege predicate

---

[13] *See, e.g.*, *In re SuperValu, Inc.*, 925 F.3d 955, 694 (8th Cir. 2019) ("The only way to pursue a claim under [I]PIPA is by satisfying ICFA's requirements because [I]PIPA does not create a separate cause of action.").

17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  violations of IPIPA.  As with a CRA claim, Plaintiffs must plausibly allege incremental harm **as a**
2  **result of the delayed notification**, as opposed to harm from the Data Incident generally.  *See In re*
3  *Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 589 (N.D. Ill. 2022) (considering
4  whether plaintiffs sufficiently alleged incremental injury because of the delayed notification under
5  both CRA and IPIPA).  Here, Plaintiffs plainly fail to do so. *See* Sections IV.B; C.3.

6    Accordingly, the ICFA claim should be dismissed with prejudice.

7    c.    Plaintiffs Do Not Allege Sufficient Facts to Support Their Claims
8    Under the North Carolina Statutes

9    Plaintiffs' NCUDTPA claim rests exclusively on purported unfairness, rather than any
10  deceptive conduct by Tea.  *See* Compl. ¶ 364.  Like California's UCL (*see* Section IV.D.1),
11  NCUDTPA finds an act unfair "when it offends established public policy, … is immoral, unethical,
12  oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable
13  assertion of ... power or position." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172 (2009) (int. quot.
14  omitted).  Some type of "egregious or aggravating circumstances" must be alleged to make out a
15  NCUDTPA claim.  *Dalton v. Camp*, 353 N.C. 647, 657 (2001) (int. quot. omitted).  Here, Plaintiffs
16  do not supply any basis for the allegation that suffering a Data Incident constitutes "immoral,
17  unethical, oppressive, or unscrupulous" behavior.  *See generally* Compl.  A third-party criminal's
18  attack on Tea's systems does not constitute an "unfair" business practice.  Plaintiffs also fail to allege
19  facts showing any substantial injury.  Even for the only category of harm that **approaches**
20  plausibility—purported monetary costs for credit-monitoring services—Plaintiffs do not allege the
21  amount of those expenses.  As a result, neither Tea nor this Court can quantify their alleged injuries,
22  let alone deem them "substantial" as the statute requires.

23    Next, Plaintiffs' NCITPA claim fails outright.  Courts interpreting North Carolina General
24  Statute section 75-65(i) uniformly hold that "a plaintiff must bring a claim for a violation of the
25  NCITPA under the [NCUDTPA]…" *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 662 (E.D.N.C.
26  2017); *see also Patton v. Experian Data Corp.*, 2018 WL 6190349, at *11 (C.D. Cal. Jan. 23, 2018)
27  (explaining that the NCITPA can be enforced through the NCUDTPA's remedial provisions); *In re*
28  *Am. Med. Collection Agency, Inc. Customer Sec. Breach Litig.*, 2021 WL 5937742, at *35 (D.N.J.

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dec. 16, 2021) ("[T]he NCITPA does not affirmatively provide an independent private right of action, but merely states that a plaintiff may enforce [it] through the NCUDTPA…").  Because Plaintiffs' NCUDTPA claim fails for the reasons set forth above, their NCITPA claim fails as well.

But even if this Court finds Plaintiffs sufficiently satisfied NCUDTPA's requirements (it should not), the NCITPA also requires Plaintiffs to plausibly allege they suffered an injury due to Tea's failure to notify them of the breach.  *See* N.C. Gen. Stat. § 75-65(a); *see also Rogers*, 243 F. Supp. at 664 (dismissing NCITPA claim where plaintiff did not allege he suffered any damages from Chase's failure to notify him of the security breach, of which he was already aware).  Here, as with their other failure-to-notify claims, Plaintiffs fail to do so. Plaintiffs' NCUDTPA and NCITPA claims should therefore be dismissed with prejudice.

**D.    Plaintiffs Do Not Sufficiently Allege Any Tort Claims**

**1.    Plaintiffs' California Unfair Competition Law Claim Fails**

a.    Plaintiffs Are Not Entitled to Equitable Relief under the UCL Because They Have an Adequate Remedy at Law

Plaintiffs' UCL claim fails from the outset.  Because the UCL provides only equitable relief, Plaintiffs must show they lack an adequate remedy at law ***before*** they can seek or obtain equitable relief.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).  Here, however, Plaintiffs also seek money damages under multiple state statutes and common-law theories, including general, compensatory, special, and statutory damages.  *See* Compl. ¶¶ 242, 259, 270, 279, 325, 336, 347, 360, 370, 387.  These requests confirm that Plaintiffs have an adequate remedy at law, foreclosing their UCL claim.  *See Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing claims for equitable relief under the UCL because plaintiff asserted five other claims which provided her an adequate remedy at law).

b.    Plaintiffs Lack Statutory Standing to Assert a UCL Claim

Plaintiffs also lack statutory standing to assert a claim under the UCL because they fail to allege they lost "money or property" as a result of the purported misconduct.  *See Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (quoting Cal. Bus. & Prof. Code § 17204).  The standing requirement under the UCL is "substantially narrower than federal

19

1    standing under Article III …, which may be predicated on a broader range of injuries."  *Griffith v.*

2    *Tik Tok, Inc.*, 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023) (dismissing UCL claim for lack of standing).

3    Here, Plaintiffs do not allege they lost any money or property because of the Data Incident.

4    The Tea Platform is free to use unless a user elects to make an optional purchase.  Although the

5    Complaint notes several In-App Purchases are available (*see* Compl. ¶ 146), no Plaintiff alleges she

6    actually made such a purchase.  *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal.

7    2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) (finding no statutory standing where plaintiffs received

8    defendant's services for free).  Some Plaintiffs vaguely claim they spent time and money on

9    identity-protection services (*see, e.g.*, Compl. ¶¶ 22, 28, 33), and two assert that they paid to freeze

10    their credit.  *See id.* ¶¶ 43, 83.  But courts have repeatedly held that "time and money spent to monitor

11    and repair their credit" or to purchase identity theft protection are ***not*** the "kind of loss of money or

12    property necessary for standing to assert a claim" under the UCL.  *See Ruiz v. Gap, Inc.*, 2009 WL

13    250481, at *3-4 (N.D. Cal. Feb. 3, 2009), *aff'd*, 280 Fed. App'x. at 692 (9th Cir. 2010).

14    Moreover, personal information is generally not considered "money or property" for purposes

15    of a UCL claim.  *See In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20,

16    2011).  Accordingly, disclosure of personal information cannot constitute an economic injury ***unless***

17    plaintiffs provide specific allegations regarding the value of the information.  *Lau v. Gen Digital*,

18    2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023); *In re Yahoo! Inc. Customer Data Sec. Breach*

19    *Litig.,* 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (rejecting UCL standing to victims of

20    data breach who failed to allege specific benefit-of-the-bargain losses or out-of-pocket expenses).

21    Here, Plaintiffs provide no allegations regarding the value of *their own* personal information.  In fact,

22    no Plaintiff alleges she even attempted or intended to participate in the market for information or

23    otherwise to drive economic value from her information as required.  *See Lau*, 2023 WL 10553772,

24    at *7.  As such, Plaintiffs' UCL claim should be dismissed.

25    c.    Plaintiffs Fail to Plausibly Allege Any Prong of the UCL

26    Even if Plaintiffs could adequately establish statutory standing (they cannot), their UCL claim

27    still fails because Plaintiffs do not allege sufficient facts showing any substantive elements.  To

28    adequately plead a UCL violation, the plaintiff must allege a business act or practice that is either

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    "unlawful," "unfair," or "fraudulent."  *Armstrong-Harris v. Wells Fargo Bank, N.A.*, 2022 WL

2    3348426, at *2 (N.D. Cal. Aug. 12, 2022).  Each of these three adjectives reflects "a separate and

3    distinct theory of liability."  *Id.* (citing *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010)).

4    Despite purporting to proceed under all three prongs (*see* Compl. ¶ 283), Plaintiffs fail to allege facts

5    sufficient to satisfy any prong.

6        ***Unlawful prong***:  The UCL's "unlawful" prong is essentially an incorporation-by-reference

7    provision.  *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (quoting *Cel-*

8    *Tech Comc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  Accordingly, where the

9    "borrowed" law, or the underlying claim, fails, so does the UCL "unlawful" claim. *Eidmann v.*

10   *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing UCL "unlawful" claim where

11   plaintiff failed to allege predicate violations of law).  Here, Plaintiff's "unlawful" claim relies solely

12   on the violation of the CRA.  *See* Compl. ¶ 292 ("Defendant Tea engaged in unlawful business

13   practices by violating Cal. Civ. Code § 1798.82.").  As Plaintiffs' CRA claim fails for reasons set

14   forth in Section IV.C.3, so does Plaintiffs' "unlawful" claim.

15       ***Fraudulent prong***:  A claim under the "fraudulent" prong is subject to Rule 9(b)'s heightened

16   pleading standard.  *See* Fed. R. Civ. Proc. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120,

17   1125 (9th Cir. 2009).  Rule 9(b) demands facts "specific enough to give defendants notice of the

18   particular misconduct which is alleged to constitute the fraud charged so that they can defend against

19   the charge and not just deny that they have done anything wrong."  *Frenzel v. AliphCom*, 76 F. Supp.

20   3d 999, 1005-06 (N.D. Cal. 2014).  Hence, the plaintiff must specifically plead "the who, what, when,

21   where, and how of the misconduct charged." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744

22   (N.D. Cal. 2019) (int. quot. omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

23   2007).

24       Here, the Complaint falls far short of pleading any "fraudulent" practices by Tea with the

25   required specificity.  Plaintiffs make mere conclusory allegations regarding Tea's purported

26   misrepresentations (*see* Compl. ¶¶ 289-293), and fail to allege the who, what, where, when, and/or

27   how of any ***actual*** user experience. *See Colgate*, 402 F. Supp. 3d at 744.  Notably, the Complaint is

28   wholly devoid of facts regarding when each of the Plaintiffs attempted to download the Tea Platform

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    or accessed Tea's website, if and when they read and acknowledged Tea's Privacy Policy

2    (incorporated by reference, *see* Compl.¶ 144 n.3) or marketing claims, when and where they saw and

3    relied on Tea's purported misrepresentations in deciding to use the Tea Platform, or any facts

4    suggesting Tea knew any statement was false when made. *See In re Anthem, Inc. Data Breach Litig.*,

5    162 F. Supp. 3d. 953, 991 (N.D. Cal. 2016) (finding plaintiffs failed to state a fraud claim under the

6    UCL where they did not specify when the privacy notices were received or when certain statements

7    were made on defendant's websites).    Because Plaintiffs fail to allege misrepresentations or

8    reasonable reliance with the required specificity, their "fraudulent" prong claim fails as well.

9        **Unfair prong**: The UCL does not define the term "unfair" and the proper definition "is

10   currently in flux" among California courts. *See id.* at 989; *Price v. Apple*, 2022 WL 1032472, at *4

11   (N.D. Cal. Apr. 6, 2022) (explaining competing standards). Nevertheless, there are at least two

12   possible tests: (1) the "tethering test," which requires "that the public policy which is a predicate to a

13   consumer unfair competition action … must be tethered to specific constitutional, statutory, or

14   regulatory provisions;" and (2) the "balancing test," which examines whether the challenged business

15   practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and

16   requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to

17   the alleged victim." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d at 1226 (N.D. Cal. 2014) (int.

18   quot. omitted).

19       Here, Plaintiffs fail to allege any basis for their assertion that suffering the Data Incident

20   constitutes 'immoral, unethical, oppressive, or unscrupulous' conduct. A bad actor's decision to

21   target Tea's systems does not transform Tea's conduct into an "unfair" business practice.    Plaintiffs'

22   closest attempt—a speculative assertion that Tea would have been unable to continue operating had

23   it disclosed supposed security vulnerabilities—is nothing more than a bare profit-motive theory,

24   which the Ninth Circuit has expressly rejected. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215

25   (9th Cir. 2020).    Plaintiffs also fail to allege any substantial injury. *See* Section IV.B.    And their

26   conclusory assertion that Tea failed to maintain reasonable data-security measures does not establish

27   unfairness under the tethering test. *See Schmitt v. SN Serv. Corp.*, 2021 WL 3493754, at *11 (N.D.

28   Cal. Aug. 9, 2021) (finding that a conclusory allegation of inadequate safeguards, without more,

1  failed to satisfy the tethering test). Because Plaintiffs cannot plead unfair conduct under any

2  recognized test, their "unfair" prong also fails.

### 2.    Plaintiffs' Invasion of Privacy by Intrusion Claim Fails

4  To successfully state an invasion of privacy by intrusion claim, Plaintiffs must show: (1) Tea

5  intentionally intruded into a place where Plaintiffs had a reasonable expectation of privacy, and (2)

6  the alleged intrusion is highly offensive to a reasonable person. *See Hernandez v. Hillsides, Inc.,* 47

7  Cal. 4th 272, 286 (2009). There is a "high bar" for pleading an invasion of privacy claim. *Schmitt v.*

8  *SN Servs. Corp.*, 2021 WL 5279822, at *3-4 (N.D. Cal. Nov. 12, 2021). Courts consistently hold that

9  in data breach cases, an alleged disclosure of personal information resulting from a "breach" or

10 "attack"—that is, an unintentional disclosure—does ***not*** satisfy the "high bar" required to plead an

11 invasion-of-privacy claim. *See, e.g.*, *id.* (dismissing invasion-of-privacy claim with prejudice and

12 explaining that "procuring information via a security breach is inherently different than obtaining it

13 through an agreed-upon exchange between business partners."); *Damner v. Facebook Inc.*, 2020 WL

14 7862706, at *6 (N.D. Cal. Dec. 31, 2020) (finding "no authority that suggests a failure to take

15 adequate measures to protect against the intentional intrusion of a third party satisfies the [intrusion]

16 element of a claim for intrusion upon seclusion.").

17 Here, Plaintiffs fail to allege—and cannot plausibly allege—any intentional intrusion by Tea.

18 As courts in this District and beyond have repeatedly recognized, there is "no authority that suggests

19 that failure to take adequate measures to protect against the intentional intrusion of a third party

20 satisfies the first element of a claim for intrusion on seclusion." *See, e.g.*, *Damner*, 2020 WL

21 7862706, at *6; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even

22 negligent conduct that leads to theft of highly personal information, including social security

23 numbers, does not approach the standard of actionable conduct under the California Constitution and

24 thus does not constitute a violation of Plaintiffs' right to privacy.") (int. quot. omitted); *see also In re*

25 *Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024), *reconsideration*

26 *denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024); *Ruiz v. Gap Inc.*, 540 F. Supp. 2d 1121, 1125,

27 1127-28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 680 (9th Cir. 2010).

28 Yet that is exactly what Plaintiffs allege. *See* Compl. ¶¶ 158-70 (describing Tea's alleged

23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   failure to secure user data and the intentional theft of that data by third parties).  Despite Plaintiffs'

2   repeated use of the word "intentional," *see id.*, ¶¶ 254-58, their *factual allegations* amount to nothing

3   more than negligence. Their invasion of privacy claim therefore fails.

4   **3.      Plaintiffs' Negligence and Negligence Per Se Claims Fail**

5          California has adopted the economic loss doctrine, which provides that, "[i]n the absence of

6   personal injury, physical damage to property, a special relationship existing between the parties, or

7   some other common law exception to the rule, recovery of purely economic loss is foreclosed" under

8   a tort theory of liability.  *Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 913 (citing

9   *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979)).  As discussed above, Plaintiffs allege no injury.

10  *See* Section IV.A.  Even if they had, their alleged injuries are purely economic and therefore barred

11  by the economic-loss doctrine.  Plaintiffs also fail to plausibly allege any exception to that doctrine.

12  They do not claim they suffered personal injury as a result of the Data Incident, nor do they identify

13  any "fraud or intentional misrepresentation" that might apply.  *See In re Sony Gaming Networks and*

14  *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012).  And although Plaintiffs

15  assert—wholly in conclusory terms—that a "special relationship" existed between Tea and its users

16  (*see* Compl. ¶ 230), they provide no factual basis for the Court to infer such a relationship.  *See*

17  *generally* Compl.

18         To determine whether a "special relationship" exists, the Court must consider six factors: "(1)

19  the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm

20  to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the

21  connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to

22  the defendant's conduct and (6) the policy of preventing future harm."  *In re Sony Gaming Networks*

23  *and Customer Data Sec. Breach Litig.* ("*In re Sony II*"), 996 F. Supp. 2d 942, 968 (S.D. Cal. 2014).

24  The presence or absence of one factor is not dispositive.  *See id.*  For example, in *Dugas*, a data breach

25  case, the court held that plaintiff's provision of his PII to the defendants in connection with his stay

26  at defendants' hotel did ***not*** create a "special relationship."  *Dugas*, 2016 WL 6523428, at *12.  The

27  plaintiff in *Dugas* alleged, as Plaintiffs do here, that defendants breached their duty when they failed

28  to "take adequate security measures to protect the information [it] obtained," "to exercise reasonable

24

care in ... securing, safeguarding, and protecting ... personal information," and to "timely disclose any incidents of data breaches." *Id.* The *Dugas* court concluded that plaintiff had "put[] forth no facts to demonstrate that a special relationship existed between him and Defendants." *Id.* The same conclusion follows here.

## V.   <u>CONCLUSION</u>

While lengthy in rhetoric, Plaintiffs' Complaint lack relevant factual elements and contains fundamental and incurable defects.  Accordingly, Tea respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: January 29, 2026

Respectfully submitted,
**BAKER & HOSTETLER LLP**

By:   <u>*/s/ Bethany G. Lukitsch*</u>
Bethany G. Lukitsch
Kamran B. Ahmadian
Alexis Cruz

*Attorneys for Defendant*
TEA DATING ADVICE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES